Hugh JONES, Petitioner,

v.

James MABRY, Commissioner, Arkansas
Department of Correction, Respondent.

No. J–76–C–87.

United States District Court,
E. D. Arkansas,
Jonesboro Division.

Sept. 12, 1979.

Stephen Engstrom, Little Rock, Ark., for petitioner.

Steve Clark, Atty. Gen., State of Arkansas, Alice Ann Burns, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

On December 12, 1974, Hugh Jones was sentenced to ten years imprisonment after a jury trial in which he was found guilty of the delivery of six ounces of marijuana in violation of Ark.Stat.Ann. § 82–2617 (1960). The conviction was affirmed upon appeal to the Arkansas Supreme Court. Petitioner thus exhausted his state remedies. He is presently on parole-release. He filed this petition for writ of habeas corpus on June 7, 1976, raising three issues:

(1) He was denied effective assistance of counsel at his state criminal trial because the denial of his motion for continuance made it impossible for him to adequately prepare for trial;

(2) He was asked improper inflammatory questions on cross-examination which were so prejudicial as to amount to a denial of a fair trial and of due process; and

(3) The chain of custody of the marijuana introduced was improperly shown.

Counsel was appointed to represent petitioner on March 6, 1979, and an evidentiary hearing was held on July 3, 1979.

### I

■ It is evident that on the third ground petitioner's claim is without merit. "[E]videntiary issues do not support a petition under § 2254 unless the introduction of such evidence violated a specific federal constitutional provisions." *Freeman v. Mabry*, 570 F.2d 813, 814 n.2 (8th Cir. 1978). Examination of the record does not reveal a violation of any specific constitutional guarantee but rather involves state procedures relative to the showing of the chain of custody of evidence. Petitioner has adduced no fundamental unfairness in the procedures at his trial and thus may not rely on this allegation.

### II

Examination of petitioner's first claim shows certain facts to be undisputed. Counsel was appointed on the afternoon of December 9 to represent petitioner at his trial scheduled for the morning of December 11 and actually held that afternoon. The defendant himself swore out and attempted to deliver subpoenas to the appropriate sheriffs' offices in several different counties, working until 11:00 p. m. and rising early the next day to see whether they had been served. Not all of the witnesses were found or served. The defendant's appointed attorney, Mr. Thiel, moved for a continuance on the day of the trial, stating that six witnesses had not been located and served by the sheriff.[1] The transcript indi-

---

1. The motion for continuance states:

"COMES the Defendant Hugh Jones, and respectfully moves the Court for a continuance for trial to a later day in the 1974 Term of this Court, and for reason states:

"1. That the Plaintiff State of Arkansas did not fix a definite day for trial until approximately 4:00 o'clock P.M. on December 9, 1974, which date was for 9:30 A.M. o'clock on December 11, 1974. That the Defendant exercised due diligence and had issued subpoenas for several witness [sic] in his behalf and delivered them into the hands of the Sheriff of Greene County, Lawrence County, and Clay County, Arkansas for service late on the afternoon and early evening of December 9, 1974. That the subpoenas issued to Clay County, Independence County and

Greene County, Arkansas have been served, but that the subpoena for witnesses, i. e. Dale Hunt, Dale Butte, Bill Lofton, Darrell Colbert, Dennis Truxler and Donald Hunt have not been served by the Sheriff of Lawrence County, Arkansas because said officer states in his return that he was unable to locate these witnesses for service and that Dale Butte is in the State of Missouri!

"2. That these witnesses are necessary and urgently needed by the Defendant in the defense of this serious charge(s); that Counsel for the Defendant is unable to prepare affidavit(s) as to the content of these witnesses testimony, if present, because Counsel has never been able to ascertain the content of such testimony, although assured by the Defendant that the same is relevant and vital to his defense.

cates that the trial court denied the motion without stating its reasons. More particularly, it did not note the absence of affidavits. (TR 4). The trial went forward that day.

The State points out that Arkansas has the usual requirement of affidavits, which attest to diligence, identify the missing witnesses, and state their probable testimony, whenever a continuance is requested. These were not supplied to the trial court in this case. But that procedure presupposes that the *original* trial setting allowed adequate time to subpoena witnesses and to prepare for trial, a situation in which the rationale for requiring affidavits is both justifiable and understandable.[2] But in a case like this, it just as clearly does not apply. Many of the witnesses had worked with the petitioner at the time of the alleged crime, but had scattered. He had not

seen them since. The defendant honestly stated in his motion that he did not know exactly what the missing witnesses would say; he and his attorney simply had no time to find them or to interview them before the trial.

A fundamental premise of an adequate defense is that counsel will have adequate preparation time. *See Powell v. Alabama*, 287 U.S. 45, 59, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The facts here indicate that appointed counsel, Mr. Thiel, spent two hours on the eve of the trial with Jones, and that he had a coffee shop meeting the morning of the trial with some witnesses, who were not closely questioned by Thiel at that time. To say that there was clearly inadequate preparation under such circumstance is not, however, to fault the attorney. He simply had insufficient time to prepare an effective defense.

"WHEREFORE, the Defendant Hugh Jones, being required to go to trial before this Honorable Court at 1:30 P.M. o'clock on December 11, 1974, A.D., and being unable to secure the presence of his witnesses aforesaid, respectfully moves the Court for a continuance to a day later in the 1974 Term of this Court so that a further effort can be made to locate and subpoena said witnesses, together with all other relief to which he is entitled herein.

/s/ George Edward Thiel,
Atty. for Dft."

2. When the trial setting allows adequate preparation time and *then* counsel asks for a continuance, *the concern of the Court must be to* insure that such a request is made in good faith. By hypothesis the defendant has *already* had time to locate and interview witnesses, and the government has committed its resources to the trial of the case. The Court, too, has scheduled time for the trial and has an interest in the trial's going forward as docketed. During the preparation time, under most state procedures and under the provisions of the Federal Rules of Criminal Procedure, Rule 16(b)(2), the defendant is *not* required to reveal his list of witnesses nor to disclose their expected testimony. In view of the adequacy of the time originally given defendant to prepare, and given the interest of the Court and the State in holding the trial as scheduled, it is only proper that an extraordinary showing of need, i. e., the list of witnesses and their probable testimony, is required to convince the Court that the motion is offered in good faith and that serious and prejudicial consequences would flow from a failure to grant a continuance. Under such

circumstances, it is not unfair to require the defendant to forego certain rights of non-disclosure of witnesses and their testimony as a condition for the consideration, and evaluation, of the motion to continue.

But, when a trial is so scheduled that it permits but one or two days of preparation time, none of these usual considerations apply. Indeed, in this situation, the identity and testimony of defendant's potential witnesses *cannot* be protected. On the contrary, defendant *must*, if the usual rule is applied, give up their names and reveal their probable testimony or forego the continuance. This, in turn, assumes he has had the opportunity to obtain such information.

There can be no presumption of bad faith in any allegation of inability to locate witnesses within such a short time, nor can there be an expectation of interviews with witnesses. The State has committed no resources well in advance, nor has the Court. The fundamental difference between this and the usual situation is that when such a short preparation time is given, it is obvious to all that a motion for continuance will be made and that such motion will not be offered in bad faith. Therefore, the Court need require no extraordinary showing to prevent abuse and to conserve resources. And, again, if in such circumstances the Court requires the affidavits, it robs the defendant of his rights of non-disclosure as given by such rules as Rule 16 of the Federal Rules of Criminal Procedure which properly work only when a *reasonable* trial setting is *first* established.

The facts of this case reveal that the motion for continuance was based on good and sufficient grounds and was not made in bad faith.

The Court makes no suggestion as to Jones's guilt or innocence or even as to his blamelessness in seeking to arrange for legal representation. But those are secondary matters compared to the basic questions: did Jones have adequate time to prepare? Did the denial of enough time to prepare constitute a denial of a fair trial? If the answers are yes, then clearly there has been a deprivation of due process in violation of the Constitution.

■ When a petitioner claims deprivation of effective representation, the Court's decision must necessarily be on an *ad hoc* basis, weighing, among other factors, the time afforded counsel, the experience of counsel, the gravity of the charge, the complexity of possible defenses, and the accessibility of the witnesses to counsel. *Wolfs v. Britton,* 509 F.2d 304, 309 (8th Cir. 1975). Here there was an extremely short time afforded counsel, and the crime, which carried a possible maximum sentence of 10 years and fine of $15,000, or both, was certainly serious. Jones's defense, trying to show that the accuser was in reality the pusher, was not an easy one to handle. And the witnesses were inaccessible to him and his attorney. Given this combination of factors, it is clear that the denial of a continuance also insured a denial of effective assistance of counsel *adequately prepared* for trial.

There can be no doubt that painstaking preparation is at least as important as trial conduct and is just as much a component of adequate representation as is forensic skill. In *McQueen v. Swenson,* 498 F.2d 207 (8th Cir. 1974), the Court held that under the circumstances of that case, appointed counsel's lack of pretrial investigation amounted to ineffective assistance of counsel. That skillful trial tactics do not cure inadequate preparation was found in *Moore v. United States,* 432 F.2d 730 (3d Cir. 1970). The Court stated in *Wolfs, supra* at 309:

> "[W]e cannot minimize the fact that effective assistance refers not only to forensic skills but to painstaking investigation in preparation for trial."

The acceptable level of preparation is at least that which a reasonably competent attorney would perform. *United States v. Easter,* 539 F.2d 663 (8th Cir. 1976). A two hour meeting and a brief discussion in a coffee shop would not be considered reasonable diligence by any attorney who was faced with preparation of this case.

■ The Arkansas Supreme Court affirmed the trial court's denial of the motion for a continuance, pointing out that such a motion is ordinarily addressed to the sound discretion of the trial court, and stating that there was no abuse here because, ". . . there is no proof . . . of the testimony which would be adduced from the absent witness.[3] However, under fed-

---

**3.** Although no affidavit was filed specifying what the unavailable witnesses were expected to testify, in his hearing before this Court Jones indicated that he expected the absent witnesses (fellow workers with the defendant and the State's primary witness, Riles) to have evidence that would impeach the State's key witness's story and would suggest the latter was the pusher. The transcript indicates:

"BY MR. ENGSTROM:

"Q Did you discuss with Mr. Teal your need for these witnesses?

"A Yes, sir, I did for the purpose of showing that Kim Riles, the type person he was, what he was doing, and how he was doing it.

"THE COURT: This was the chief witness against you?

"THE WITNESS: Yes, sir.

"BY MR. ENGSTROM:

"Q Mr. Teal stated to the Court in filing his motion—that is, stated to the trial court concerning these witnesses as follows: 'Be-

cause counsel has never been able to ascertain the contents of such testimony.' In other words, he stated that he didn't know the contents of that testimony, but you told Mr. Teal the reason you wanted these witnesses; is that correct?

"A I did.

"THE COURT: What did you tell him?

"THE WITNESS: I told him that I had some guys out on the job that had came to me after I got, you know, arrested and got back. They came off the job—like I said, I lived real close. They would come around by the house when I finally got back home two weeks later nearly and told me if there was anything they could come to court and testify to to help me out or, you know, whatever, they would do it.

"So far as setting down—I had so much on my mind—and really saying, 'What do you know about Kim Riles?' or this type thing, I didn't. They did—some of them that I talked

eral constitutional standards there may be circumstances under which even the requirement of such a showing would be improper. Here the case was set at approximately 4:00 p. m. on December 9, some 41½ hours before the trial was scheduled to begin. What if the Court had set it for 5:00 p. m. on the afternoon of December 9, providing counsel with one hour to subpoena and obtain witnesses and to prepare for trial? If then a motion for continuance were filed, would it be reasonable to require "proof . . . of the testimony which would be adduced from the absent" witnesses? Federal constitutional standards require that at some point a criminal case be so set for trial that the defendant and counsel will have a real, not theoretical, opportunity to interview witnesses, subpoena them, and to prepare for trial. As stated above, this basic right cannot be conditioned upon disclosure of the defendant's evidence. As is apparent in this case, the right to a reasonable and adequate time to prepare for trial is tied inextricably to the right to effective legal representation. The Court has already pointed out that the defendant did not have the effective assistance of prepared counsel at his trial.

The Arkansas Supreme Court also pointed out in affirming the trial court:

> to did tell me as far as they knew they could contact somebody else who would know something if they didn't. This is the type of thing.
> "After I got to court and, you know, court started, then we tried—we tried to get a continuance for the witnesses and they denied us all the way.
> "THE COURT: You are saying that they were suggesting they may have information about the principal prosecuting witness or could get some?
> "THE WITNESS: Yes, sir.
> "THE COURT: What is his name again?
> "THE WITNESS: Riles.
> "THE COURT: But that you didn't have an opportunity to talk to them, and then they scattered around?
> "THE WITNESS: Yes, sir. Some lived in Sedgwick, Imboden, some lived here and some lived there. They just disbanded after the job.
> "BY MR. ENGSTROM:
> "Q  These were co-workers on your construction job?
> "A  They were like subcontractors.

"Furthermore, the refusal to grant a continuance could have been a proper ground for a motion for a new trial which is permissible, though not required, for appellate review. Ark.Stat.Ann. § 43–2704 (Supl.1975). In such a motion the appellant would have had the opportunity to offer evidence as to how he was prejudiced during the trial due to the absent witnesses even if he could not have sufficiently done so when his motion for a continuance before trial was refused. In the case at bar it is asserted by the appellant that the absent witnesses' testimony 'is relevant and vital to his defense.' However, in support of this allegation, appellant failed to file an affidavit or offer any proof indicating how the testimony of any of the absent witnesses would be vital and relevant to his defense. Neither did appellant indicate by a motion for a new trial that the absence of any of these witnesses was prejudicial to his defense. Appellant did not allege in his motion for a continuance that his appointed counsel did not have sufficient time for trial preparation except with respect to the absence of certain witnesses. We are of the view that appellant has failed to discharge the burden of

> \*   \*   \*   \*   \*   \*
> "THE COURT: Other than their potential knowledge about Mr. Riles, did they have any evidence that would have been of benefit to you?
> "THE WITNESS: Just the talk that went on on the construction site: that everybody knew that the boy was selling or smoking or whatever on the job.
> "THE COURT: Was Riles an employee out there, too?
> "THE WITNESS: Yes, sir, him and his dad. He was an apprentice electrician.
> \*   \*   \*   \*   \*   \*
> "BY MR. ENGSTROM:
> "Q  You didn't know what these people were going to testify to?
> "A  I had no idea.
> "Q  Did you believe they were needed for discrediting Kim Riles?
> "A  From what I had heard and seen out on the job, the only thing I knew—and the way the man had approached me—I took it anybody could come and testify as to the character of the kind of person he was.

demonstrating how he was prejudiced by the denial of his motion for a continuance which resulted in ineffective assistance of counsel. We certainly cannot say the trial court abused its discretion."

If under Arkansas procedure defense counsel should have filed a motion for a new trial, then his failure to do so would constitute another example of inadequate representation. However, this Court is of the view that the federal constitution would not permit a state procedure which would require *any* showing because the case was *never* set sufficiently in advance of trial to give reasonable notice and to permit reasonable and adequate preparation. Of course, a defendant can agree to go to trial upon a moment's notice, but if he objects, he is entitled to a reasonable time. What constitutes a "reasonable time" will depend upon the facts and circumstances of the individual case. Suffice it to say that in the circumstances of this case, less than two days is clearly inadequate.

■ It is the obligation of the federal court to apply the proper federal constitutional standard. That standard requires representation by counsel who has had adequate time to prepare for trial. The circumstances in this case indicate that petitioner was deprived of representation by counsel who was, or could have been, adequately prepared to defend him, and that petitioner was thereby stripped of a constitutionally guaranteed right. Because the denial of the continuance deprived Hugh Jones of adequate representation, the Court must grant his petition for writ of habeas corpus.

## III

■ The remaining allegation, that questions were allowed of such obvious impropriety that Jones was deprived of due process, raises serious questions concerning the constitutional sufficiency of the Arkansas law regarding questions which may be put to a defendant on cross-examination. It seems that there was at least technical compliance with state law. But it is not equally clear that following the state law meets the federal constitutional requirements of due process.[4] The Arkansas case law in

---

4. It is not this Court's attitude that the Arkansas law is unconstitutional on its face. However, there are serious questions which must be raised concerning its application. Obviously a rule which allows questioning about prior misconduct, without the requirement of any predicate, unless opposing counsel objects, invites error of the sort we find here. There is simply too great a probability that the prejudicial effects of such a question about misconduct will be improperly taken into account. Nor is there an adequate prohibition against irresponsible, baseless questioning should a prosecutor be unscrupulous enough to ask such questions. Thus, the potential harm to the defendant is clear.

But there is a detrimental effect to the State as well, for under the Arkansas rule the prosecutor could not impeach the answer given to a query about a prior act which might well have some relevancy to the charges before the jury. If, for example, the prosecutor here had the two witnesses to whom he alluded available to testify that indeed Jones had boasted to them that he had killed Harper, he apparently could not, under the Arkansas procedure, call those witnesses to show that the defendant was lying. *See* footnote 5, *infra*.

It does appear that, as applied in this case, the Arkansas rule is unconstitutional. The questions which were allowed were so inflammatorily prejudicial that their just being asked robbed Jones's trial of fundamental fairness.

The Court is aware that by Acts 1975 (Extended Sess., 1976), No. 1143, the Arkansas Uniform Rules of Evidence were adopted and have been effective since July 1, 1976. The provisions now include, in Ark.Stat.Ann. 28–1001 (1977 Cum.Supp.):

"Rule 404(b). Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

"Rule 608(b). Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which

effect at the time of Jones's trial indicated that a defendant might be asked about a prior criminal act, not limited to convictions. Where such an inquiry was made, counsel had to take the answer. Absent an objection demanding that the prosecutor show the predicate for his question out of the hearing of the jury, the prosecutor was not required to—indeed, could not—prove the basis for his line of questions.

At Jones's trial on a charge of delivery of six ounces of marijuana, the line of questions proceeded as follows:

"Q  In fact, you are the biggest pusher in this part of the country——

"A  No, sir, I am not.

"Q  Hugh?

"A  No, sir, I am not.

"Q  You are not?  Have been for a number of years?

"A  No, sir, I have not.

"Q  For at least 3 years?

"A  No, sir, I have not.

"Q  You deny that?

"A  Yes, sir.

"Q  You know Phil Harper?

"A  Yes, sir.

"Q  In his life time?

"A  He was one of the best friends I ever had.

"Q  And you shot and murdered him so that you could take over as the head

man in the drug business in this part of the county, did you?

"A  No, sir, I did not.

"Q  You deny killing him?

"A  Yes, sir, I do.

"BY MR. THEIL: If you Honor please, there is no evidence here that he has murdered anybody.  There is no conviction here.  He can't go into that.

"BY THE COURT: You may ask the witness if he did commit some crime or if he has been convicted of some crime.  He is bound by his answer.

"BY MR. THEIL: All right.

"BY MR. PEARSON:

"Q  On at least two different occasions, Mr. Jones, did you quiet [sic] boastfully brag to, in the presence of others in one of the local night club having killed murdered [sic] Phil Harper in order to take over as head man in the drug business around here, didn't you?  Get him out of the way, get the competition out of the way? [5]

"A  That is a lie.

"Q  You didn't admit that in the presence of others?

"A  No, sir, I did not.

"Q  And you deny having killed and murdered Phil Harper?

"A  Yes, sir, I do."

---

character the witness being cross-examined has testified.            .

"The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility."

"Rule 609(a).  General Rule.  For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one [1] year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or a witness, or (2) involved dishonesty or false statement, regardless of the punishment.

"(b).  Time Limit.  Evidence of a conviction under this rule is not admissible if a period of more than ten [10] years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date."

5.  The Arkansas law is the same for the question of whether the defendant bragged about a killing as for the direct question of whether he did the killing.  The prosecutor must take the answer.  He is precluded from presenting evidence about such collateral matters.  *See McAlister v. State*, 99 Ark. 604, 616, 139 S.W. 684 (1911), quoted with approval in *Brown and Bettis v. State*, 259 Ark. 464, 469, 534 S.W.2d 207 (1976).

It is hard to imagine that any more prejudicial matter could have been injected into the trial. That prejudice existed whether or not the prosecutor had a predicate for his questions. At the very least, defense counsel should have demanded the grounds be made known, out of the jury's hearing, and if none existed, a mistrial, if requested, would have been the proper result. And even has an adequate "predicate" showing been made by the prosecutor,[6] the overwhelming prejudice from such questions would militate strongly against their being permitted. Whether the Court views it as a matter of inadequate representation by defense counsel, prosecutorial abuse, or simple egregious prejudice, the fact remains that this series of questions was inflammatory in the extreme. It could not but divert the juror's attention from the issue of the guilt or innocence of the defendant of the crime charged. It is of interest to note that the jury recommended the maximum of ten years for the crime of delivery of six ounces.[7] Obviously, the questions' prejudicial effect may be exacerbated when, as in Arkansas, the same jury that decides guilt assesses the punishment.

Having determined that the prosecutor's questions were prejudicial, the Court must still determine whether there was a denial of a constitutional right reviewable in a federal habeas corpus proceeding. The inquiry is whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). *See also, Williams v. Henderson*, 451 F.Supp. 328 (E.D.N.Y.1978).

Given the facts and circumstances before us, this Court must, and does conclude that the questions asked made the trial so fundamentally unfair as to taint the whole process and deny the defendant due process. Thus, constitutional error, cognizable in a federal habeas corpus proceeding, has been shown.

This Court concludes that the writ of habeas corpus must be granted and petitioner's conviction set aside because his trial was fundamentally unfair.

It is therefore Ordered that the petition for writ of habeas corpus be, and it is hereby, granted.

---

6. In an attempt to show that there was a proper predicate for the questions asked, the State has offered the affidavit of the prosecutor, who questioned Jones, which states that the "questions were asked in good faith and based upon knowledge, gained in my capacity as Prosecuting Attorney, of the criminal investigation surrounding the death of Phil Harper and the fact that the defendant, Hugh Jones, had been interrogated as a criminal suspect." There are no specifics, no recital of the evidence, if any, linking petitioner to the crime. There is no reference to any witnesses who may have heard the defendant brag about killing Harper. At the evidentiary hearing the deputy prosecutor, who in effect prepared the case, could only add:

"THE WITNESS: If I understand correctly, Mr. Harper was found dead over on St. Francis River in a house or building of some sort around the St. Francis River, which is east of Paragould. This death occurred prior to my involvement with the Deputy Prosecuting Attorney's office, so all I really know about the investigation was comments made to me by officers, even today. It's an unsolved—there is some question whether it was a suicide, but the nature of it was such there was a serious question of whether it was a suicide. There's been no charge filed or nothing I know of to date relative to accusing anyone formally of that offense.

\* \* \* \* \* \*

"THE WITNESS: I do know Mr. Jones was contacted, I believe by some law enforcement officials in connection with that offense.

\* \* \* \* \* \*

"THE WITNESS: It's my memory that he was investigated—if not accused informally of it, at least investigated in connection with that homicide prior to the trial."

7. Jones's previous criminal record, as he stated it to the jury, included a felony conviction for burglary, apparently in 1961, and two more recent misdemeanors. (TR 103–105).