**Jay Randall WOLFS,
Petitioner-Appellant,**

v.

**R. G. BRITTON, Superintendent, Tucker Unit, Arkansas Department of Correction, Respondent-Appellee.**

No. 74–1558.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1974.

Decided Jan. 31, 1975.

31. *See, e. g.,* Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616, and cases cited therein.

Robert A. Newcomb, Ark. Dept. of Correction, Pine Bluff, Ark., for petitioner-appellant.

Michael S. Gorman, Asst. Atty. Gen., Little Rock, Ark., for respondent-appellee.

Before LAY and BRIGHT, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The petitioner before us, Jay Randall Wolfs, was convicted by a jury of assault with intent to kill and his punishment was assessed, by the same jury, at nineteen years in the penitentiary. He appealed his conviction to the Supreme Court of Arkansas. His conviction was there affirmed, with a reluctant concurrence by Justice Fogleman.[1] Petitioner (hereafter defendant) subsequently brought a petition for writ of habeas corpus,[2] denied by the District Court for the Eastern District of Arkansas, from which denial appeal is taken to this court.

The case was characterized in the district court as "bizarre," and by concurring Justice Fogleman, of the Supreme Court of Arkansas, as involving "inexplicable conduct." There is no question as to the accuracy of such characterizations. A brief resume of the testimony adduced at the trial will serve to place the constitutional issue before us in its proper perspective. On the night of October 8–9, 1972 the defendant and a companion,

---

\* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. "Although I am well aware of the problems of circuit judges in maintaining docket currency and affording a speedy trial in criminal cases, I reluctantly concur in the result reached in this case. My reluctance is attributable to my recognition of the problems encountered by appointed counsel in affording effective assistance, in the limited preparation time afforded here, to one charged with such a grave offense based on such inexplicable conduct." Wolfs v. State, 255 Ark. 97, 104, 498 S.W.2d 878, 882–883 (1973).

2. 28 U.S.C. § 2254.

having partaken of alcoholic beverages, and defendant (on the morning of the 8th) having smoked a marijuana cigarette, embarked on a "shooting spree." They cruised around the community, defendant shooting at signs, buildings, street lights, traffic lights, and, twice, at a truck driven by the complaining witness, Mr. Fitzgerald. These latter shots resulted in the charge made, assault with intent to kill.

Both the defendant and his driver, Mr. Samples, were so charged and both were initially represented by the Public Defender. Upon Samples' decision to turn State's evidence, a conflict of interest between Samples and defendant arose, resulting in the appointment of separate counsel for defendant at approximately 1:30 p. m. on Monday, October 30th. When the case was called for trial on Wednesday, November 1st, counsel for defendant orally moved for a continuance for the following reasons:

MR. TAYLOR: [Counsel for Defendant]

As I am sure the Court is aware, the defendant at this time, Randy Wolfs, hereby moves the Court for a continuance, for the following reasons: (1) Present counsel for the defendant was appointed at approximately one-thirty (1:30) on October the 30th, 1972, some one and one-half days ago, and although counsel has investigated his case as thoroughly as possible over that period of time, due to the number of witnesses that the State will call (approximately ten witnesses) and because of the necessity of talking with the defendant and talking with witnesses for the defendant, it has been impossible to talk to all witnesses before time of trial. Without such conversations and statements, it is practically impossible to defend this defendant properly. Secondly, it has come to the attention of counsel last night that this defendant has had psychiatric problems in the past, and that in order to develop a possible defense of mental deficiency in this defendant, it would be necessary to have a thorough psychiatric examination. This cannot be done or could not be done last night, and a continuance is therefore asked. Thirdly; relatives of the defendant have not been contacted and the first word of relatives of this defendant was last night at approximately ten o'clock when his father called the office of counsel for the defendant. His father is on his way to Fayetteville, Arkansas, and it is believed the father can give vital information in regard to the defendant's background and in regard to matters necessary to properly defend this person. For this reason also, we ask for a continuance. Also, witnesses—character witnesses that could testify for this defendant that live out of the state and could not be contacted between Monday afternoon and this morning, Wednesday morning, in order to be here and testify for this defendant. For all of the above reasons the defendant respectfully prays for a continuance.

Considerable colloquy between the court and counsel followed with respect to the witness situation, and to a narrative report (furnished to defendant) of the Public Defender's interviews with three of the state's nine witnesses. The court noted the availability of the complaining witness, who was in the courtroom, for questioning. The court stated, as well, that "I am going to give you an opportunity for Dr. Finch [a local psychiatrist] to examine this man between now and one-thirty." The court stated, as well, that he had "a very tight trial schedule" and, at a later point, that "I want to try the case. I have to do it within sixty days. The docket is full, it is full until February, and I just don't feel—. Now, if Dr. Finch says the man is psychotic, well then, I'll send him to the state hospital now and that ends it, but if he says he isn't, I don't know of any reason we can't go to trial. We will start this afternoon, late and finish tomorrow."

Counsel's exception to the denial of continuance was noted on the record, as well as his objection to the "impaneling

of any jury at this time." The jury was then selected and sworn and the trial resumed the next day, without further requests for continuance.

The state called the complaining witness and Samples, who gave their versions of the shooting, and several officers, who testified as to the arrest and to a correlation between the shotgun and shells found in the car driven by Samples and the physical damage to the truck. The truck driver was not injured.

The defense submitted to the jury an issue of credibility, defendant denying that he had fired on the truck. In addition challenge was sought to be made of the specific intent to kill the truck driver required by the charge made. The theory of counsel was that defendant was incapable of forming the intent to kill. As counsel stated, "[H]e wouldn't even kill a rabbit. He is a vegetarian." Defendant testified that he was "not a person who could willfully do harm to any person or any other animal," that he had been employed as a driver for a poultry processing firm but "couldn't have stood" to work inside where "[t]hey were killing chickens and cutting them up," and that as a result of his belief that "man was [not] put on this earth to be a carnivore" he had been a vegetarian "for about the last five years." It was further sought to be shown, through his grandfather, that in childhood the defendant had no interest in "guns or toys of this nature," that he had an aversion to eating meat, and that he had expressed an aversion to violence. Objections to the questions to the grandfather, although answered before the objections were interposed, were sustained, the court ruling in the presence of the jury that such matters were immaterial, irrelevant, self-serving, or too remote for consideration. Counsel finally desisted from such line of questioning in view of the rulings made. Dr. Finch testified, supporting in general the theory of the defendant concerning his claims of aver-

sion to violence and killing. The doctor also testified that, in his opinion, "if he did, as alleged, hit the truck, it was probably an accident." The prosecutor's theory as to specific intent was that "Intent to kill is proved by facts and circumstances surrounding the event." In addition, the testimony of the complaining witness was that "someone—I don't know who said it, but it was a loud voice that said, 'Kill the son of a bitch! I'll kill the bastard.'" Inexplicably, neither the defendant nor his driver, Samples, was questioned on this alleged statement evincing a specific intent.

The jury, as of course it was free to do, rejected the only testimony substantially helpful to the defendant, found him guilty, and sentenced him to nineteen years.

Direct appeal was taken to the Supreme Court of Arkansas, which held that the trial court's denial of defendant's motion for continuance was not an abuse of discretion, and had not prejudiced him. The conviction and judgment were affirmed. The concurrence of Justice Fogleman therein, as we have noted, was reluctant.[3] Some four months later defendant brought his petition for writ of habeas corpus. He asserts that he "was denied his Sixth Amendment Right to effective assistance of counsel due to the belated appointment of trial counsel which precluded them from developing an effective defense for him." The District Court held that he was not denied effective assistance of counsel and was not deprived of his liberty without due process of law.

It is clear upon the record that the Supreme Court of Arkansas, in ruling upon whether "the denial of [defendant's] motion for continuance" resulted in "ineffective representation,"[4] applied both state standards and what it conceived to be federal standards, quoting, in part, from Chambers v. Maroney, 399 U.S. 42, 54, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).[5] In fact, no claim otherwise is

---

3. Note 1, *supra.*

4. Wolfs v. State, *supra* note 1, 255 Ark. at 99, 498 S.W.2d at 879.

5. " 'But we are not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel or to hold that, whenever a habeas corpus

made in the briefs before us, the State conceding below that defendant's state remedies had been exhausted. We are satisfied that the "substance" of defendant's claims before us were "fairly presented" to the Supreme Court of Arkansas. Picard v. Connor, 404 U.S. 270, 275, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); 28 U.S.C. § 2254(b); see Brown v. Allen, 344 U.S. 443, 447–452, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Davis v. Sigler, 415 F.2d 1159, 1161 (8th Cir. 1969).

■ The issue thus presented goes beyond mere denial of continuance, vel non. The issue urged is that, under the peculiar and unique circumstances of this case, the denial of continuance in order that defense counsel might properly prepare the case amounts to a denial of constitutional due process. We stress at the outset that "the Federal courts do not sit in supervisory review of the state courts."[6] Nor do we fail to give "deference to the state court's findings of fact [where] reliable procedures were used in making the latter."[7] The facts here found by the state court we neither disturb nor challenge. But we do not defer to state determinations in matters of federal law. The matter was well put recently by the Fifth Circuit, Judge Wisdom of that court holding in part:

The obligation of the federal judge is * * * to apply the proper federal constitutional standards based on the underlying facts, although the conclusions drawn from the facts may differ from the state court's conclusions.[8]

■ In our consideration of the problem of effective representation we start with the seminal decision in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the court holding that although "The prompt disposition of criminal cases is to be commended and encouraged," nevertheless,

in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense.

287 U.S. at 59, 53 S.Ct. at 60. An accused, it is clear, must not be forced to trial "with such expedition as to deprive him of the effective aid and assistance of counsel." White v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 980, 89 L.Ed. 1348 (1945). The State's duty to provide counsel is "not discharged by an assignment at such time and under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Powell v. Alabama, supra, 287 U.S. at 71, 53 S.Ct. at 65.

■ The problem presented here is not that often encountered, where complaint is made of counsel's lack of skill at trial, that is, of his professional trial competence. Rather, our inquiry is whether the appointment of counsel one and one half days before trial was, under all the circumstances,[9] so tardy as to preclude

---

petition alleges a belated appointment, an evidentiary hearing must be held to determine whether the defendant has been denied his constitutional right to counsel.' We are of the same view." Wolfs v. State, supra note 1, 255 Ark. at 103, 498 S.W.2d at 881.

6. Megantz v. Ash, 412 F.2d 804, 806 (1st Cir. 1969), citing Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940).

7. Lay, Modern Administrative Proposals for Federal Habeas Corpus: The Rights of Prisoners Preserved, 21 DePaul L.Rev. 701, 714 (1972); 28 U.S.C. § 2254(d).

8. West v. Louisiana, 478 F.2d 1026, 1032 (5th Cir. 1973), citing Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963);

Brown v. Allen, 344 U.S. 443, 506–507, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Frankfurter, J.).

9. Recently the Court declined to "fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel" and reaffirmed its case by case approach. Chambers v. Maroney, 399 U.S. 42, 54, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970). See Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Such has been the rule in this circuit. United States v. Briddle, 443 F.2d 443, 451 (8th Cir. 1971); Lupo v. United States, 435 F.2d 519, 522–523 (8th Cir. 1970); United States v. Schroeder, 433 F.2d 846, 852 (8th Cir. 1970), cert. denied, 400 U.S. 1024, 91 S.Ct. 590, 27 L.Ed.2d 636 (1971); Kress v. United States,

the giving of effective assistance of counsel. As we have held:

[O]n petition for writ of habeas corpus by state prisoners errors of the state trial court are not reviewable on federal habeas corpus unless there has been a deprivation of constitutional rights such as to render the judgment void or to amount to a denial of due process. Durham v. Haynes, supra, 368 F.2d at 990; Trujillo v. Tinsley, 333 F.2d 185, 186 (10th Cir. 1964); Wilson v. Nebraska, 316 F.2d 84, 85–86 (8th Cir. 1963). Habeas corpus relief on the ground of incompetency of counsel or denial of effective counsel will be granted "only when the trial was a farce, or a mockery of justice,[A] *or was shocking to the conscience of the reviewing court,* or the purported representation was only perfunctory, in bad faith, a sham, a pretense, *or without adequate opportunity for conference and preparation.*"

[A] See our recent discussions of the "farce and mockery" standard in Garton v. Swenson, 497 F.2d 1137 (8th Cir. 1974) and McQueen v. Swenson, 498 F.2d 207 (8th Cir. 1974).

Scalf v. Bennett, 408 F.2d 325, 327–328 (8th Cir.), cert. denied, 396 U.S. 887, 90 S.Ct. 175, 24 L.Ed.2d 161 (1969) (emphasis and footnote added).

 We gain but little help from the unique facts of particular cases. The claim by a defendant that late appointment of counsel has denied him the effective assistance of counsel must necessarily be decided on an ad hoc basis.[10] In each case we must weigh, among other factors, the time afforded counsel, the experience of counsel, the gravity of the charge, and the complexity of the possible defenses as well as the accessibility of witnesses to counsel.[11] We stress,

411 F.2d 16, 22 (8th Cir. 1969); Stamps v. United States, 387 F.2d 993, 995 (8th Cir. 1967); Ray v. United States, 197 F.2d 268, 271 (8th Cir. 1952).

**10.** Rastrom v. Robbins, 440 F.2d 1251, 1253 (1st Cir.), cert. denied, 404 U.S. 863, 92 S.Ct. 53, 30 L.Ed.2d 107 (1971). *See* Waltz, Inadequacy of Trial Defense Representation as a

also, that although the adequacy of counsel cannot be determined solely on the basis of the amount of time spent in preparation,[12] we cannot minimize the fact that effective assistance refers not only to forensic skills but to painstaking investigation in preparation for trial. As the Third Circuit has noted:

Adequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom. The careful investigation of a case and the thoughtful analysis of the information it yields may disclose evidence of which even the defendant is unaware and may suggest issues and tactics at trial which would otherwise not emerge.

\* \* \* \* \* \*

\* \* \* The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or to arrange for their attendance. Moore v. United States, 432 F.2d 730, 735, 739 (3rd Cir. 1970) (en banc) (footnote omitted).

Whether the time for preparation was adequate will also depend in part upon developing standards of minimally adequate preparation. In McQueen v. Swenson, 498 F.2d 207 (8th Cir. 1974), after exhaustive review of the precedents, we held that under the circumstances of the case, appointed counsel's lack of pretrial investigation amounted to ineffective assistance of counsel. *Id.*, 498 F.2d at 213–218. There, counsel appointed four days before trial had failed to interview any prosecution witnesses or to investigate the case beyond his consultation with the defendant. We there

Ground For Post-Conviction Relief in Criminal Cases, 59 Nw.L.Rev. 289, 329–31 (1964).

**11.** *Stamps v. United States,* 387 F.2d 993, 995 (8th Cir. 1967); Ray v. United States, 197 F.2d 268, 271 (8th Cir. 1952).

**12.** *See* Lupo v. United States, 435 F.2d 519, 522–523 (8th Cir. 1970); Kress v. United States, 411 F.2d 16, 22 (8th Cir. 1969).

drew support from those cases which have outlined specific standards of minimally effective preparation and investigation. *Id.,* 498 F.2d at 214–216; United States v. DeCoster, 159 U.S.App.D.C. 326, 487 F.2d 1197, 1203–1204 (1973); Coles v. Peyton, 389 F.2d 224, 226 (4th Cir.), cert. denied, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). Summarizing the duty to investigate, we quoted the American Bar Association Project on Standards for Criminal Justice, Standards Relating to The Prosecution Function and the Defense Function § 4.1 (Approved Draft 1971) [hereinafter ABA *Standards*]:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty.

Counsel must be given time to discharge this duty.

We turn, then, to the peculiar facts before us. First of all we have an incident characterized by reviewing courts as both inexplicable and bizarre. The record is silent as to any possible motive on defendant's part to kill the complaining witness. Shooting at everything in sight, lights, signs, a building and a truck, is indeed reprehensible conduct, but it is a far cry from a specific intent to kill. Although this is not a case as aggravated as *McQueen,* where counsel failed totally in his duty to investigate, it is clear on the record that time was not made available to examine adequately and analyze the testimony of the witnesses available. At the time the continuance was denied counsel had not completed his investigation of the prosecution witnesses, and it was only during the adjournment before the jury was selected that he interviewed the complaining witness..

▇ Moreover, during this period counsel was pursuing, with psychiatric assistance, the possibility of an insanity defense.[13] Although the psychiatrist's eleventh hour report, based on a brief examination,[14] disclosed no substantial mental illness, counsel was entitled to "a reasonable time * * * for preparation of such defense as might be based on the facts developed by the examination." Hintz v. Beto, 379 F.2d 937, 941 (5th Cir. 1967). An attempt was made to show that defendant was incapable or unlikely to form the requisite specific intent to kill, but he was being tried in a strange jurisdiction[15] where witnesses corroborating his alleged aversions to violence were not available. Save for the grandfather, no time was allowed either for the identification or examination of the out-of-state witnesses sought to be interviewed by defense counsel. We note, also, that a psychiatric defense, such as was here asserted, is both complex to master and difficult of exegesis.

Finally, counsel's brief preparation time was doubly taxed by the fact that defendant was tried before a jury empowered to fix his sentence,[16] before

---

13. There is a "critical interrelation between expert psychiatric assistance and minimally effective representation of counsel." United States v. Edwards, 488 F.2d 1154, 1163 (5th Cir. 1974); *see* Brinkley v. United States, 498 F.2d 505 (8th Cir. 1974).

14. Dr. Finch personally interviewed defendant for about fifty minutes; in addition his secretary conducted psychological tests which Dr. Finch interpreted.

15. He had lived most of his life in Tucson, Arizona, and only approximately three months were tried.

16. Ark.Stat. § 43–2307 (1964); *see generally* McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). "While much has been written on the questions whether jury sentencing is desirable and whether it is compatible with the modern philosophy of criminal sentencing that 'the punishment should fit the offender and not merely the crime,' Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949) [the Supreme] Court has never expressed doubt about the constitutionality of that practice." Chaffin v. Stynchcombe, 412

which character testimony as well as testimony in mitigation would be of the utmost importance. As the draftsmen of the ABA *Standards* have stated:

> The lawyer also has a substantial and very important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. This cannot effectively be done on the basis of broad general emotional appeals or on the strength of statements made to the lawyer by the defendant himself. Information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships and the like will be relevant, as well as mitigating circumstances surrounding the commission of the offense itself. Investigation is essential to fulfillment of these functions.

ABA *Standards* 227. It is particularly pertinent to mitigation that counsel pointed out in his motion for continuance that he had not had time to contact out-of-state character witnesses and relatives of the defendant who "it is believed * * * can give vital information in regard to defendant's background and in regard to matters necessary to properly defend this person." The defendant's grandfather did appear for the defense, but we are satisfied from our review of the trial record that counsel's efforts to develop background information in mitigation of the offense and punishment were seriously hampered by the haste with which the case was called to trial.[17]

■ The result of this combination of circumstances was that a young man, twenty-one years of age, with a psychiatric defense, without prior record of assault or violence,[18] tried in a strange community, before a sentence-fixing jury, by counsel assigned to the case one and one-half days before trial, essentially without the benefit of evidence in mitigation, has been sentenced to nineteen years (two years short of the maximum) for an inexplicable offense in which no one was injured. The prejudice is clear. The result is shocking to our judicial conscience. Since the diligence and skill of counsel are not questioned[19] the outcome must be attributed directly to the inadequate preparation time allowed.

The judgment of conviction is vacated. The case is reversed and remanded to the district court with directions to issue the writ of habeas corpus discharging petitioner, subject to the right of the State, if it wishes to do so, to try him on the indictment here involved within 90 days of the time the mandate of this court reaches the district court.

Reversed and remanded.

---

U.S. 17, 21–22, 93 S.Ct. 1977, 1980, 36 L.Ed.2d 714 (1973) (footnote omitted).

**17.** Another witness sought by defendant as a character witness was interviewed "in the hall," but "his appearance was shabby" since he had just gotten off work and was still in his blue jeans, and it was decided not to use his testimony.

**18.** Defendant had been convicted twice for public drunkenness, once for disorderly conduct and once for the sale of amphetamine tablets.

**19.** The District Court in its opinion noted that "No question is raised here as to the competency of [defense counsel] to represent the petitioner, or as to their good faith, diligence, and devotion in his cause, and it is evident from the record that they did the best that any reasonably competent attorney could be expected to do with the tools at hand."