**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dennis PORTERFIELD,
Defendant-Appellant.**

**No. 78–1940.**

United States Court of Appeals,
Tenth Circuit.

Argued May 5, 1980.

Decided June 5, 1980.

Rehearing Denied July 30, 1980.

Ralph H. Johnson, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, with him on brief) for plaintiff-appellee.

Claude C. Wild, III, Denver, Colo., for defendant-appellant.

Before DOYLE, BREITENSTEIN and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendant-appellant was found guilty in the United States District Court for the District of Utah, Central Division, on an indictment charging the sale of narcotics. The charge was aiding and abetting the sale of a controlled substance, contrary to 21 U.S.C. § 841.

The fact situation is somewhat complex and is of importance only as background since the sole issue is adequacy of legal representation. The start of the transaction occurred when the defendant talked to a Drug Enforcement Agency (DEA) informer who referred him to a supposed purchaser of heroin in Denver. In truth this individual, one Julie Williamson, was a full time agent for the DEA. The informer phoned Williamson and then arranged for the defendant-appellant to talk to her. He, in turn, invited her to come to Salt Lake City to purchase heroin. Defendant called Williamson back the next day and arranged with her to take a particular plane which he agreed to meet. Following the telephone call, Williamson went to Utah. However, she traveled on a plane which arrived earlier than that which defendant had recommended. Upon her arrival she met with a special agent of the DEA, who was stationed in Utah and who gave her $950.00 with which to purchase heroin. Armed with the purchase money, she met the defendant at the appointed time at the airport. She was then driven to a cafe on South Second Street (in Salt Lake City). They proceeded to the second floor where she was introduced to a man named Hubbard who had two bags of powder. Williamson asked if the price was still $950.00, and Hubbard said that it was. One of the

bags had light colored powder which had been cut and mixed. Defendant asked that his be taken out of the "good stuff" which was a darker brown powder.

Defendant was also given a needle and a measuring spoon, and, amazingly, he proceeded to inject the powder in the presence of Williamson. After that, the powder which had been purchased by Williamson was delivered to her. Simultaneously, the money was transferred to Hubbard. She then told defendant that she was ready to leave, whereupon they went back to the automobile.

After trying to persuade Wiliamson to throw out the powder because of his belief that they were being followed, he let her out at a hotel where she was met by an agent who took her to the Drug Enforcement office and performed a test of the purchased material. It proved to be heroin.

The question which is presented in this court is whether the judgment of the district court should be reversed because of the inadequacy of the defendant's then attorney, a Mr. Gilliland.

There are several problems concerning the representation which is complained of. One of the witnesses who the defendant's counsel wished to call was the informer with whom the defendant had been communicating prior to the above-described purchase. Mr. Gilliland said that he had been under the impression that the informer was going to be called by the government to testify. In fact, the government had no intention of calling him. On the day of the trial Gilliland learned for the first time that the witness had not been subpoenaed by the government. He then moved for a continuance, stating that he had learned that the witness, a Mr. Espinoza, was in San Luis, Colorado.

Mr. Gilliland made no effort to locate this witness or to interview him prior to the day that the case was tried. A few days previously there had been a setting which the defendant had failed to honor. The cause was then reset for the day of the actual trial. The jury was there when the request was made. The court found that there had

not been due diligence by Gilliland in determining what the witness would testify to, if anything. The trial court denied the request for a continuance. The actual date of the trial was April 28, 1978. Originally, it had been scheduled for March 27, 1978, but was vacated as a result of the death of Judge Ritter.

On April 11, 1978, the defendant, through his attorney, filed a motion to dismiss and a memorandum in support of the motion. This was based solely on 18 U.S.C. § 3161 *et seq.*, the Speedy Trial Act of 1974. The motion erroneously stated that the defendant was arraigned August 23, 1977, and that the trial was scheduled to begin in March 1978, but was continued at the request of the United States. The argument was that the cause should have been tried within 120 days of arraignment because he was indicted during the second 12-month period following the time limitation of the Speedy Trial Act, which was July 1, 1976.

The trial court denied the motion to dismiss. As we have noted above, on the day of the trial, April 28, 1978, Gilliland requested that the trial court grant a continuance. The court denied this request. It was on that occasion that the trial court found that there had not been due diligence in determining what the witness would testify to.

Present counsel maintains that the motion to dismiss which was made pursuant to the alleged violation of the Speedy Trial Act was based on misconception on the part of Mr. Gilliland as to the date of arraignment. It was also contended that he misread the law in saying that the defendant was indicted during the second 12-month period following the effective date of the Speedy Trial Act time limitation, and that trial should have been held within 120 days of arraignment. It was pointed out that under 18 U.S.C. § 3163(b)(1), the effective date of the time limitation was the expiration of the twelve-calendar-month period following July 1, 1975 or July 1, 1976. It is said that counsel overlooked section 3163(c), altogether; that had he examined it, he

would have discovered that the applicable limitation was 180 days after the return of the indictment, which was April 20, 1977. It is said that he also overlooked the fact that the sanction of dismissal does not become effective until after the date of expiration of the fourth twelve-calendar-month period following July 1, 1975, or after July 1, 1979. Our attention is also called to the fact that Gilliland filed notice of appeal on behalf of the defendant and thereafter did nothing during the following year. This, of course, in itself, reflects in an unfavorable way on Mr. Gilliland's competence.

But, as we view the case, the clear showing of incompetence stems from failure to make any kind of a factual investigation prior to trial. It was not until the day of the actual trial that he gained knowledge concerning the informer. It is not surprising that the trial court denied the request for a continuance. Counsel had plenty of time to conduct a factual investigation, and this he should have pursued immediately after his appointment. This kind of factual information is not always easy to come by, but undoubtedly the district attorney would have advised Mr. Gilliland whether or not the witness was going to be called by the government. It was negligent to fail to inquire until the eleventh hour. Had the district attorney refused to identify the informer, counsel could have solicited the aid of the court and the judge certainly would have ordered the district attorney to reveal the name and state whether he was going to call him. If not, counsel could have arranged to interview the witness if the latter remained in the country. If the witness had known of facts which would have established the defense of entrapment, it is possible that it could have contributed to the development of this defense. The name of the mysterious informer came out during the trial. His name was Frost. This fact was brought out by counsel for defendant, Mr. Gilliland, during the trial. So the U.S. Attorney never contributed. By this time it was too late to either get the witness or to develop the subject matter.

The principle is so fundamental that the ABA Standards of Criminal Justice have, in section 4.1 thereof, emphasized that it is the duty of the defense lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. This standard also mandates an investigation of the prosecution's file. Mr. Gilliland was not even aware of the identity of the informer prior to the trial. The trial court took express notice of the fact that Gilliland had not exercised due diligence in ascertaining whether the informer would be present.

\* \* \* \* \* \*

Recently this court has adopted a new standard governing assistance of counsel in *Dyer v. Crisp*, 613 F.2d 275 (10th Cir. en banc), *cert. denied*, —— U.S. ——, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). We there said: "[t]he Sixth Amendment demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Id.* at 278.

As we have noted, the record reveals a lack of diligence and skill on the part of the former attorney, Mr. Gilliland. The showing of the several mistakes is plain. Indeed, there is a lack of showing that Mr. Gilliland carefully interviewed his client prior to the trial. Certainly this source ought to be exploited in order to discover names of potential witnesses or possible defenses. The one witness who was called by Mr. Gilliland at the trial was the DEA agent, Ms. Williamson, who had previously testified on behalf of the government.

One other matter: The trial court's instructions were accepted by counsel as submitted. After conviction Gilliland was appointed to represent the defendant on appeal. He did file a timely notice, but this was all. Nothing further occurred during the entire following year. At the end of that time the court on its own motion vacated the appointment and named present counsel.

■ The government argues that a showing of prejudice is essential, but we disagree. In passing, we mentioned that the defendant in *Dyer v. Crisp* had not suffered prejudice. It is not accurate, however, to

conclude that "prejudice" is a second tier in the test of incompetency. Reasonable diligence and skill is the test! It would be a mockery in this case to say that the defendant was clearly guilty and that the incompetence of counsel made no difference. Where, as here, the incompetence of counsel is pervasive, the defendant ought not to be required to prove prejudice on top of the inadequacy. The burden should be on the government to establish the lack of prejudice. *See, Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Needless to say, there is no such showing made here. Nor is this a case in which discrete trial errors had been committed. *Cf. Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir. 1978).

We need only conclude that the trial counsel's representation of the defendant failed to meet the requirements of the Constitution and constituted a failure to exercise the reasonable skill and diligence of a reasonably competent defense lawyer. We need not measure the extent of the prejudice or the extent of the lack of effective assistance of counsel.

The judgment of the district court is reversed and the cause is remanded for a new trial.