**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert D. GOLUB, Defendant–Appellant.**

**No. 79–1577.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 16, 1980.
Decided Nov. 17, 1980.

Daniel R. Christopher, Asst. U.S. Atty., Denver., Colo. (Joseph F. Dolan, U.S. Atty., Denver, Colo., on brief), for plaintiff–appellee.

Thomas A. Wallace, Denver, Colo., for defendant–appellant.

Before BARRETT and DOYLE, Circuit Judges, and TEMPLAR,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The defendant herein was charged in an eight count indictment with violation of the mail fraud statute, 18 U.S.C. 1341, and with the transportation of money obtained by fraud in violation of 18 U.S.C. 2314. The government dismissed two of the charges and defendant was found guilty of the remaining six. The trial court sentenced the defendant to five years in prison on each of the six counts, to run concurrently.

The appeal on his behalf is by a lawyer who entered his appearance in order to handle the appeal.

The indictment was returned on February 14, 1979. Arraignment took place on February 24, 1979. On March 7, 1979, the cause was set for trial commencing the week of April 16, 1979. Counsel appeared with the defendant at the arraignment.

On March 30, 1979, defendant–appellant's then counsel moved to withdraw from the case. The motion stated several reasons for the effort to withdraw. In essence these reasons were that the defendant had not cooperated with counsel in that he had failed to keep appointments, and, more importantly, that the defendant had failed to abide by the fee agreements made between him and counsel, and that the defendant had misled counsel as to his whereabouts.

On the basis of the showing made in his motion to withdraw, and the defendant's consent thereto, the court, on March 30, 1979, entered an order allowing counsel to withdraw. At that time the court advised appellant that no continuance would be granted and that trial would be had two weeks later, with or without counsel.[1] It wasn't until April 11, 1979 that the lawyer who tried the case received the file from previous counsel. It contained the indictment and 200 pages of discovery information.

Sheldon Emeson, who was the uncle of the defendant, entered his appearance as counsel for the defendant after having first sought a continuance of the trial. He had called the trial judge on the long distance telephone and explained the situation, including the fact that he had just been asked to come into the case and was unable to try it unless he had some time. The trial judge advised Mr. Emeson that his oral request for a continuance was denied and that defendant had to go to trial as scheduled. It was after this that the case proceeded to trial on April 17, 1979. On April 20, 1979, after two days of deliberation, the jury found the defendant guilty on the counts indicated above.

### Defendant's Contentions

The defendant assigns four grounds in support of his effort to obtain a reversal:

1. That he was denied the effective assistance of counsel.
2. That the jury was improperly instructed by the trial court.
3. That the evidence was insufficient to warrant a conviction.
4. That the sentence imposed was excessive.

We need only address the defendant's first point, that is, that he was denied the effective assistance of counsel. Since this point has merit, the other points need not be considered.

### The Background Facts

The attorney who entered his appearance and tried the case, Mr. Emeson, has filed an

---

* Templar, Senior District Court Judge, District of Kansas, sitting by designation.

1. The court's statement to defendant that no continuances were to be allowed and that the case would proceed regardless of obtaining counsel was positive and certain.

affidavit with the court, in which he has acknowledged that his efforts on behalf of the defendant were inadequate. The affidavit states that the defendant, Mr. Golub, is Mr. Emeson's nephew by marriage. It further states that Mr. Emeson has practiced law exclusively in the Arkansas Valley since 1970, and has resided in Lamar, in Prowers County, Colorado, since that time. (The defendant is a resident of Colorado Springs, Colorado.) Mr. Emeson goes on to state that he first learned of the indictment on April 5, 1979. The defendant had not paid his previous attorney and lacked funds to obtain other counsel. It was due to the family relationship that Emeson sought to obtain a continuance of the trial set for the week of April 16, 1979, so as to allow the defendant to obtain other counsel or the services of the public defender. On April 9, 1979, according to Emeson, he placed a long distance telephone call to the trial judge with respect to the defendant's problem. The judge advised that the case would go to trial as scheduled whether the defendant had counsel or not. Emeson had planned to help the defendant obtain the services of a competent trial attorney, but he soon concluded that a responsible attorney would not accept the case on such short notice, and he agreed to represent the defendant at trial after considering the possible alternatives. Between April 9, 1979 and April 16, 1979, Emeson rearranged his own schedule, reviewed the discovery material provided by the government, studied the indictment, conferred with the defendant and researched the law and the procedures.

The indictment described transactions which had occurred in the period from March 1, 1978 throughout the rest of that year. There were four witnesses residing in the State of Colorado, three from Texas, two from New York and one each from Oklahoma and Mississippi. The government's discovery consisted of over 200 pages of testimony.

Emeson appeared at the trial on April 16, 1979, the appointed day. However, it was continued until the morning of April 17, 1979, at which time the jury was selected and recess was granted the government to arrange for the presence of witnesses. The testimony commenced on April 17, 1979. The government rested its case in mid-afternoon of the 17th, and the defendant presented testimony that day and on the following morning. Thereafter, a recess was taken to prepare instructions to be given to the jury. The cause was submitted to the jury in mid-afternoon of April 18, 1979, and the jury deliberated on that day, the next day, and until 4:45 p. m. of April 20, 1979.

In his affidavit, a copy of which is appended to this opinion, Emeson states that during the time available to him he was unable to interview witnesses and investigate their testimony, and was unable to prepare (learn about) evidence in favor of the defendant. The time was spent analyzing the transactions. Emeson further states he had not tried a criminal case in federal court for over twenty years, and was unable to prepare voir dire questions for the jury, outline witnesses' testimony for cross-examination, or prepare possible jury instructions. The conclusion of Mr. Emeson is "throughout the trial, and since the verdict, affiant feels that his attempt to represent the defendant was, for the reasons stated, unwise and legally ineffective."

### Applicable Law

■ Until recently in this circuit the law was that in order to prove ineffective assistance of counsel, a defendant was required to show that the trial was a farce, a mockery of justice, shocking to the conscience of the court, or that the representation was in bad faith, a sham or pretense, or without adequate opportunity for conferences and preparation. *Gillihan v. Rodriguez*, 551 F.2d 1182, 1187 (10th Cir. 1977), cert. denied 434 U.S. 845, 98 S.Ct. 148, 54 L.Ed.2d 111; *Johnson v. United States*, 485 F.2d 240 (10th Cir. 1973). Our present standard requires only that the defendant show that the defense counsel did not exercise the skill, judgment and diligence of a reasonably competent attorney. *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir. en banc 1980), cert. denied 445 U.S. 945, 100 S.Ct. 1342, 63

L.Ed.2d 779 (1980); *United States v. Porterfield*, 624 F.2d 122, 124 (10th Cir. 1980). In *Porterfield*, supra, we held that it was not necessary that defendant show that he was prejudiced by the incompetence of his attorney. We there stated:

> We need only conclude that the trial counsel's representation of defendant failed to meet the requirements of the Constitution and constituted a failure to exercise the reasonable skill and diligence of a reasonably competent defense lawyer. We need not measure the extent of the prejudice, or the extension of the lack of assistance of counsel. 624 F.2d 125.

In the *Porterfield* case we examined the record which showed the attorney's actions in our effort to determine whether the defendant had been adequately represented.

The Third Circuit follows a standard similar to that which we have recognized. It has consistently looked to the record to determine whether the manner in which counsel proceeded was consistent with the established standard of adequate representation by a reasonably competent attorney. *Moore v. U.S.*, 432 F.2d 730 (3d Cir. 1970); *U.S. v. Varga*, 449 F.2d 1280 (3d Cir. 1971); *U.S. v. Hines*, 470 F.2d 225 (3d Cir. 1972), cert. denied 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973); *U. S. v. Davenport*, 478 F.2d 203 (3d Cir. 1973).

### The Law Applied to These Facts

In the present case the particular nature of the complaint is such that an examination of the attorney's conduct during the trial does not in itself reveal whether the claim of inadequate representation is justified. Unlike in the cases previously mentioned, the appellant does not point to any particularly glaring errors by the defense attorney. The claim of inadequate representation is based upon, *first*, the general lack of ability of Mr. Emeson in the field of criminal law, and, *second*, the lack of time available to Mr. Emeson to prepare for the case, taking into account its complexities, his lack of knowledge and skill in the area, and the unique circumstances.

The government calls attention to the fact that the record is inadequate in that no formal motion was made for a continuance; that not only was there failure to make an objection at the start of the trial, but that Emeson stated that defendant *was* ready for trial. Emeson had, of course, previously explained to the judge over the telephone his need for extra time, and the court had flatly refused to give it to him. Therefore, it would not have served any purpose in these circumstances for him to have filed a written motion requesting a continuance. This would not have changed the situation because the trial judge made it plain that they were going to trial whether the defendant had a lawyer or didn't have a lawyer.

Had it not been for the fact that Emeson was a relative by marriage of this man, it seems unlikely that he would have accepted the case. One can only speculate as to why he did not make objections at the time of trial; possibly he was apprehensive that this would prejudice him with the judge.

■ The United States Attorney concedes that plain errors or defects affecting substantial rights may be noticed, although they were not expressly brought to the attention of the court. See Rule 52(a), Rules of Criminal Procedure. We are of the opinion that, under the facts of this case, the court must take notice of the defendant's claim to ineffective assistance of counsel, even though Mr. Emeson failed to file a formal motion for continuance.

First, the trial judge allowed the original lawyers for the defendant to withdraw; second, the judge stated that the case was going to trial even if the defendant did not have a lawyer; third, we have to be mindful of the fact that this is not the simplest kind of case. Mail fraud cases tend to be factually and legally complex. The case before us called for a lawyer who had experience in criminal trials and/or knowledge of fraud claims. Additionally, even an experienced lawyer needs time to prepare for a trial. The lack of time which Mr. Emeson had to prepare this case must be regarded as having prevented an understanding and

knowledgeable defense, and as having interfered with the defendant's ability to obtain competent counsel.

The defendant was placed in an impossible situation. He was unable to hire a new lawyer in the short period available prior to the scheduled trial date. If there had been many prior continuances of the proceedings in this case, or if the defendant had been seeking to avoid going to trial, there might have been justification for the denial of a continuance. However, the case had been filed scarcely more than two months at the time that the continuance was denied.

Prior to our decision in *Dyer v. Crisp*, supra, the test of inadequacy of counsel was most difficult for the defendant to prove. But even under the harsh rules which then existed this court recognized that if counsel had not had adequate opportunity to prepare for the case, it could be shown that representation by that counsel was ineffective. *Johnson v. U.S.*, supra; *Gillihan v. Rodriguez*, supra. It is doubtful whether any attorney could have prepared this case in the time allotted, even recognizing that the file of the United States Attorney was provided. The attorney did not even have access to the witnesses. Virtually all of them had to travel from other states. Seven of the eleven witnesses called by the prosecution came from Texas, Oklahoma, Mississippi and New York. Moreover, the charge was a grave one following as it did a scheme to defraud in which defendant collected advance fees in the process of "packaging" loans. This is an extremely difficult case to try from the standpoint of both the prosecution and the defendant because much of the proof is circumstantial. It is necessary to bring forth basic facts from which inferences can be drawn that the money taken from the victims was a part of a good faith effort to get the loans.

■ In *Wolfs v. Britton*, 509 F.2d 304 (8th Cir. 1975), the court set several standards in discussing whether an attorney had had sufficient time to prepare his case and to render his assistance effective to his client. These included (1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel. In the *Wolfs* case the attorney was appointed one and one-half days before trial. The charge in the state court was assault with intent to kill. The cause before the federal court was a collateral attack on the judgment by writ of habeas corpus. The court made clear that the inquiry was not "that often encountered where a complaint is made of counsel's lack of skill at trial, that is, of his professional trial competence." 509 F.2d at 308. The court said it was merely a question of whether appointment of counsel one and one-half days before trial was, under all the circumstances, "so tardy as to preclude the giving of effective assistance of counsel." Id.

The Eighth Circuit also emphasized that little was to be gained from other cases; that each case depended upon the presence of peculiar facts showing the experience of counsel, the gravity of the charge, the complexity of possible defenses and the accessibility of witnesses to counsel. The court went on to say that effective assistance refers not alone to forensic skills, but to painstaking investigation in preparation for trial, as well. The court relied on its prior decision in *McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974), where counsel had been appointed four days before the trial and had failed to interview any prosecution witnesses or to investigate the case beyond his consultation with the defendant.

■ When we apply the standards that were enunciated in *Wolfs v. Britton*, supra, to the case at bar, we must conclude that Mr. Emeson's representation of the defendant failed to conform to any of the accepted standards. There was inadequate time to prepare for the case, the attorney lacked experience in this particular field; the charge was a serious one, as evidenced by the fact that the defendant was sentenced to five years in prison; the defenses were complex; and, finally, counsel did not have access to the witnesses.

*Wolfs v. Britton,* supra, quotes the American Bar Association standards relating to the defense function, Section 4.1, wherein it is declared

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty.

The court's ruling was that counsel had to be given time to discharge this duty.

The United States Attorney takes the position that *prejudice* was not established, that is, that Emeson's actions as counsel were not prejudicial to the defendant. But proof of specific prejudice is not always required in order to render assistance of counsel ineffective, particularly when, as here, the record establishes that trial counsel simply did not have adequate time to prepare for trial. Under such circumstances, we reject the contention that proof of specific prejudice *at trial* is a necessary element.

It cannot be said that prejudice in the sense that it affected the outcome needs to be proven in the instant case. The surrounding circumstances, in and of themselves, evidence the prejudice without further proof. We need not, therefore, speculate on the question as to whether incompetent counsel affected the result.

In *Glasser v. U.S.,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), the court said that "the right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." Hence, if Mr. Emeson had insufficient time to properly prepare his case, or if he was not competent to try criminal cases of this nature, the fact that he conducted himself in a credible way is wholly irrelevant.

## Conclusions

We are not saying that every defendant who has had his counsel replaced just prior to trial can claim inadequate representation of counsel. This is a unique set of facts in that the lawyer was a relative of the defendant and felt obligated to take on the case since there was no one else to do so. This, combined with the grave penalty provided and the fact that several of the government witnesses were from out of state, and the further fact that Emeson did not receive the file until five days prior to the scheduled trial date, renders this case a unique one, and we are not criticizing the representation given under the circumstances. Since this is a question of constitutional law, it is particularly susceptible to being considered under Rule 52(b) of the Federal Rules of Criminal Procedure as a plain defect.

In view of these special circumstances and the sensitiveness of the constitutional requirement, we must conclude that the cause is to be reversed, with directions to the trial court to see to it that defendant is adequately represented by counsel at a new trial.

It is so ordered.

## AFFIDAVIT

Sheldon Emeson submits this Affidavit in connection with the Defendant's Appeal:

Affiant represented the Defendant at trial in the United States District Court. The Defendant is Affiant's nephew by marriage. Affiant has practiced law almost exclusively in the Arkansas Valley of the State of Colorado since 1970 and has resided in Lamar, Prowers County, Colorado, for the major portion of that time. The Defendant resides in Colorado Springs, Colorado.

Affiant first learned of Defendant's Indictment on April 5, 1979. The Defendant had not paid his previous attorney and did not have any funds to obtain other counsel. Because of the family relationship, the Affiant sought in Defendant's behalf to obtain

a continuance of the trial set for the week of April 6, 1979, to allow the Defendant to retain other counsel or obtain Public Defender's Office.

On April 9, 1979, the Affiant placed a long distance call to Judge Fred Winner regarding the Defendant's problem and circumstances. Judge Winner advised that the case would go to trial as scheduled whether the Defendant had counsel or not.

Affiant planned to help Defendant obtain the services of a competent trial attorney; however, it was felt that no responsible attorney could accept the case on such short notice. Affiant agreed to represent the Defendant at trial after considering all other alternatives.

The time between April 9, 1979, til April 16, 1979, was spent re–arranging Affiant's Court schedule; reviewing the Discovery provided by the government; studying the Indictment; consulting with the Defendant, and researching law and procedure.

The Indictment related to transactions occurring in the period from March 1, 1978, throughout the rest of that year and involved four witnesses residing in the State of Colorado; three witnesses from Texas; two witnesses from New York, and one witness each from Oklahoma and Mississippi. The government's Discovery consisted of over two hundred (200) pages of interviews.

On April 15, 1979, Affiant traveled to Denver to appear at trial on April 16, 1979. On the 16th, the case was set over to commence on the morning of April 17. After the jury was selected, a recess was granted to the government to arrange for witnesses and testimony to commence the morning of April 18. The government rested its case mid–afternoon of the 18th and the Defendant presented testimony that day the following morning. During Court recesses jury instructions were discussed and the Court advised that a written instruction would be given the jury in view of the length and complexity of the instructions.

The case was submitted to the jury in the mid–afternoon April 18 and the jury delib-

erated the remainder of that day and the next until 4:45 P.M. on April 20, 1979. During the deliberations one jury Interrogatory was sent to the Court.

In the time available the Affiant could not interview witnesses and could not investigate their testimony. Defense evidence could not be developed. A good deal of time was spent analyzing the complex transactions. The distinction between state and federal law relating to fraudulent transactions required study and research.

The Affiant had not tried a federal criminal case in over twenty years and was unable to prepare questions for jury voir dire; outline witnesses testimony for cross–examination or to prepare possible jury instructions. The fact that the government dismissed the first two Counts of the Indictment only after the jury had been selected diminished the effective time for preparation against the remaining Counts.

Throughout the trial, and since the verdict, Affiant feels that his attempt to represent the Defendant was for reasons stated, unwise and legally ineffective.

/s/ Sheldon Emeson
Sheldon Emeson    # 3239
Attorney for Defendant
Cow Palace   Suite 374
P.O. Box 1492
Lamar, Colorado   81052
(303) 336–9722

Subscribed and sworn to before me this 26th day of November, 1979.

My commission expires May 17, 1981.

/s/ Doris Conner
Notary Public