**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Harrison P. CRONIC,**
**Defendant-Appellant.**

No. 80–1955.

United States Court of Appeals,
Tenth Circuit.

April 19, 1982.
Rehearing Denied July 16, 1982.

---

David L. Russell, U. S. Atty., John E. Green, First Asst. U. S. Atty., Oklahoma, City, Okl., for plaintiff-appellee.

Harrison P. Cronic, defendant-appellant, pro se.

David W. Duncan, Duncan & Chew, Durango, Colo., for defendant-appellant.

Before SETH, Chief Judge, SEYMOUR and PECK *, Circuit Judges.

JOHN W. PECK, Circuit Judge.

The dispositive issue on appeal in this case is whether appellant Cronic was denied effective assistance of counsel in the trial at which he was convicted of eleven counts of mail fraud.

The relevant facts are as follows. Cronic was indicted, with two codefendants, on thirteen counts of mail fraud and unlawful use of a fictitious name, 18 U.S.C. §§ 1341 & 1342. The indictment was handed down on Feb. 5, 1980, nearly five years after the

* Honorable John W. Peck, United States Circuit Judge for the Sixth Circuit, sitting by designation.

**1128**

alleged commission of the offenses charged. Cronic and two business associates, Merritt and Cummings, were charged in this indictment with kiting checks between banks in Tampa, Florida and Norman, Oklahoma. The checks were drawn on the accounts of Skyproof Manufacturing, Inc., a Florida company that was held out as a manufactory of roof trusses for mobile homes.

The government's evidence at trial purported to show that the alleged check-kiting scheme was masterminded by Cronic, for whom Skyproof was a "front". Principal government witnesses were former codefendants Merritt and Cummings, who had plea-bargained. These witnesses identified Cronic as the true head of Skyproof, which was nominally held by Cummings. The government's other proof comprised the testimony of seventeen witnesses from four states, as well as over fifty documentary exhibits.

At trial Cronic was represented by a court-appointed attorney who specialized in real-estate law. This attorney's experience in federal criminal practice is not clear from the record, but Cronic's defense was at best his second venture into that field. Court-appointed counsel had twenty-five days to prepare Cronic's case. The government's investigation of that case yielded, as the United States' attorney testified before the grand jury, literally thousands of documents, including hundreds of checks. Defense counsel's trial strategy may be fairly summarized as putting the government to its proofs, pointing an accusatory finger at one of the allegedly defrauded banks, and arguing that the banks' toleration of overdrafts was an informal extension of credit to a legitimate business.

Cronic was convicted on eleven of thirteen counts and given a committed sentence of twenty-five years plus an $11,000 fine. He argues that this sentence was based on erroneous information, but our disposition of this case moots this issue. We vacate Cronic's convictions on the grounds that he was denied effective assistance of counsel.

I. *Morrison* and the Burden of Showing Prejudice from Violations of the Sixth Amendment.

■ The government argues that Cronic has not shown on appeal that his trial lawyer failed to exercise "the skill, judgment and diligence of a reasonably competent defense attorney", which is how the Sixth Amendment right to assistance of counsel is described in this Circuit. See *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). Cases after *Dyer* have established that when circumstances hamper a given lawyer's preparation of a defendant's case, the defendant need not show specified errors in the conduct of his defense in order to show ineffective assistance of counsel. See *United States v. King*, 664 F.2d 1171, 1172–73 (10th Cir. 1981); *United States v. Golub*, 638 F.2d 185, 187 (10th Cir. 1980). This is an eminently reasonable rule, for there is no way an appellate court can say precisely how a given case would have been handled by a reasonably diligent and properly prepared lawyer. The prejudice from lack of preparation and experience cannot be nicely weighed.

There is no conflict between the rule of *King* and *Golub* and the Supreme Court's opinion in *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). In *Morrison* the Court held that pretrial "interference" with the right to counsel did not warrant the most drastic remedy of dismissing an indictment "absent demonstrable prejudice, or substantial threat thereof". *Id.* at 365, 101 S.Ct. at 667. Nothing in *Morrison* suggests that "a substantial threat of prejudice" may not be inferred from the circumstances of pretrial and trial representation. Nothing in *Morrison* suggests that reversal of a conviction may not be "relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial". *Id.* at 365, 101 S.Ct. at 667.

II. Application of *King-Golub* Tests to Cronic's Case.

■ Under *King* and *Golub*, the circumstances to be considered in determining

whether inadequacy of representation may be inferred without proof of specific prejudice at trial include: "(1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel." *King, supra,* 664 F.2d at 1173; *Golub, supra,* 638 F.2d at 189. Comparison of Cronic's case with King's is apt. King's attorney was given 27 days to research and prepare a defense to a tax fraud charge that the government developed over a three year period. Cronic's attorney was given 25 days[1] to prepare a defense to a mail fraud charge that the government had developed over a four-and-one-half year period. King faced a sentence of up to five years; Cronic faced a sentence of up to sixty-five years, and was in fact sentenced to twenty-five years. *King* does not note the accessibility of witnesses to counsel. In Cronic's case no defense witnesses appeared, but the government's witnesses came from four different states. Cronic lived in Florida and Georgia, his attorney in Oklahoma.

The only material distinction between King's case and Cronic's is that the former was apparently more complex, involving approximately 200 witnesses and 5,000 exhibits. See 664 F.2d at 1172. Nevertheless, Cronic's case was not an ideal one for an aspiring criminal defense lawyer to cut his teeth on. As Judge Doyle stated in *Golub,* "[m]ail fraud cases tend to be factually and legally complex. [Golub's case] called for a lawyer who had experience in criminal trials and/or knowledge of fraud claims". 638 F.2d at 188. If Cronic's case was indeed simpler than King's, this advantage was offset by his appointed counsel's total or near-total lack of relevant experience.[2] In sum, we hold that *King* controls and requires reversal of Cronic's conviction.

We do not hold that an attorney's lack of relevant experience inevitably gives rise to ineffective assistance of counsel. We simply hold that on the facts of this case, applying the criteria set down in *King* and *Golub,* Cronic cannot be said to have been adequately represented.

III. Issues on Retrial

 Cronic raises several other issues that might arise again should he be retried. He argues that the trial court erred in allowing one Levine, who once represented Skyproof, Cronic, and codefendant Cummings, to withdraw as Cronic's counsel and to continue as Cummings'. Cummings, as noted, plea-bargained and testified against Cronic. Her testimony portrayed Cronic as the true perpetrator of the alleged check-kiting. Cross-examination by Cronic's trial counsel stressed that Cummings was the legal owner of Skyproof, through which the kiting was supposedly done. This bears out that there was a clear conflict of interest between Cronic and Cummings, and the trial court was amply justified in allowing Levine to withdraw as Cronic's counsel.

 There was likewise no error in allowing Levine to continue as Cummings' attorney. Levine asserted that he learned no damaging privileged information in the course of his prior representation of Cronic. His assertions were borne out by the events at trial: Levine himself did not testify, and

---

1. Cronic's court-appointed attorney asked for a minimum of thirty days to prepare. This was the minimum figure suggested by Cronic's previous attorney, a former U. S. Attorney with considerable experience in criminal practice. The court granted Cronic's court-appointed attorney a twenty-five day continuance. Cronic himself asked for a more experienced attorney, but was told that if he wanted to choose his attorney he should hire one. The aptness of that remark is underscored by Cronic's professed ability to come up with $350,000 to reimburse a defrauded bank, *after* he had been convicted.

It is also of interest that Cronic declared his indigency after stating in a pro se motion that it was "unreasonable of [Cronic's retained counsel] to believe he would not receive his fee in full".

2. Court-appointed counsel's prior experience in federal criminal practice was limited (as told to Cronic in court) to "involvement" in one other case. Counsel told the jury during opening argument that Cronic's defense was his "first trial".

Cummings' testimony raises no doubts of any breach of Cronic's attorney-client privilege. Cummings' own constitutional right to counsel of her own choosing outweighed any interest in avoiding the vague "improprieties" alleged by Cronic.

■ Cronic also argues that the trial court erred in not requiring disclosure of grand jury attendance records so that Cronic could determine if the indictment was found by twelve "informed" grand jurors. Cronic relies in this argument particularly on *United States v. Leverage Funding Systems, Inc.*, 478 F.Supp. 799, 800 (C.D.Cal. 1979). *Leverage Funding* was reversed by the Ninth Circuit eight months before the filing of appellant's briefs. See *United States v. Leverage Funding Systems, Inc.*, 637 F.2d 645, 648–49 (9th Cir. 1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). We agree with the Ninth Circuit that there is no statutory or legal requirement that at least twelve grand jurors who vote to indict have heard all the evidence relevant to that indictment. *See id.* The trial court therefore, did not err in refusing to order discovery of grand jurors' attendance records. Nor did the district court abuse its discretion in refusing to order pretrial disclosure of testimony before the grand jury, for Cronic had shown no particularized need for such disclosure. *See, e.g., United States v. Parker*, 469 F.2d 884, 889 (10th Cir. 1972).

The judgment of conviction is hereby vacated, and the case is remanded for further proceedings not inconsistent herewith.