**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Terry Francis GALLAGHER,**
**Defendant-Appellant.**

**No. 78-1331.**

United States Court of Appeals,
Tenth Circuit.

Submitted May 16, 1979.

Decided May 6, 1980.

Myron Rene Hausheer of Hamilton & Hausheer, Topeka, Kan., for defendant-appellant.

James P. Buchele, U.S. Atty., Topeka, Kan., for plaintiff-appellee.

Before HOLLOWAY, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Terry Francis Gallagher was convicted by a jury on eight counts of an indictment charging him with crimes committed in connection with his escape from the United States Penitentiary at Leavenworth, Kansas.[1] On appeal Gallagher contends the trial court committed reversible error by (1) refusing to grant certain of defendant's Fed.R.Crim.P. 17(b) motions, (2) failing to provide defendant, who was proceeding pro se,[2] with sufficient time to interview his witnesses, (3) denying defendant's motion

---

1. Gallagher was charged and convicted of conspiracy to escape, 18 U.S.C. § 751(a); conveyance of a weapon within the penitentiary, *id.* § 1792; escape, *id.* § 751(a); assaulting a correctional officer, *id.* §§ 111, 1114; two counts of kidnapping, *id.* § 1201(a); theft of government property, *id.* § 641; and interstate transportation of a stolen motor vehicle, *id.* § 2312. The validity of the indictment is not challenged.

2. At Gallagher's request the court appointed an attorney to serve as defendant's legal advisor during the trial.

to allow the jury to inspect the vehicle in which he allegedly escaped from the penitentiary, and (4) failing to determine whether defendant was prejudiced by out-of-court exposure of jurors to United States marshals. This case was submitted on the briefs by agreement of the parties. For reasons that appear below, we affirm.

Evidence adduced at trial showed that defendant and four other inmates escaped from the penitentiary by secreting themselves behind a partition constructed to resemble the inside front wall of a prison truck used to deliver waste materials to a dump located outside the prison walls. When the truck arrived at the dump on this occasion, the escapees, armed with knives, accosted the inmate-driver and the prison official accompanying him. Taking these men as hostages, the escapees left the prison grounds. Later that afternoon the vehicle and hostages were found abandoned at the Kansas City International Airport in Missouri.

At trial defendant admitted the escape, but raised two defenses: that he lacked the requisite intent to commit the crimes charged because his mind was being controlled by Kelly David Chapman, a fellow inmate; and that he was not guilty of kidnapping because the inmate-driver and prison officer were accomplices to the escape. Further facts will be discussed below in connection with the separate issues.

I

Before and during the trial, the judge granted nine Fed.R.Crim.P. 17(b) motions and secured governmental cooperation in fulfilling the substance of four others. But the court denied defendant's motions to compel the attendance of a certain psychiatrist, and three other witnesses, Susan Atkins, David Lee Brown, and Richard Alsop, and defendant contends the court erred in so ruling. We disagree.

Rule 17(b) provides that "upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense," the court shall order service of a subpoena on that witness. "Necessary" means in general "relevant, material and useful." *United States v. Barker*, 553 F.2d 1013, 1020 (6th Cir. 1977).

In order to prove what he termed the "satanic" defense, defendant sought to compel the attendance of the psychiatrist involved in the California trial of Charles Manson, and of Susan Atkins, one of Manson's so-called followers. When the motion was heard by the court, the purpose for compelling the attendance of these individuals was stated to be defendant's need to show that control exercised by one person over the mind of another is a "real thing." The court denied the motion, reasoning that the request was too remote, speculative and unconnected with the charges against defendant.

Gallagher asserts the testimony of these persons was directly relevant to the issues of criminal intent and criminal responsibility. *See Wion v. United States*, 325 F.2d 420 (10th Cir. 1963), *cert. denied*, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964). From the record and briefs, we understand his defense to be that his mind actually was controlled at the time of the escape, not that he merely thought it was controlled, as might be asserted in a defense based upon insanity. Assuming that to be a viable defense, we do not see how the testimony of the psychiatrist and Atkins, neither of whom had any connection with defendant, was relevant to showing actual control of his mind. This case is not like *United States v. Julian*, 469 F.2d 371 (10th Cir. 1972), upon which defendant relies. There we held it was error not to grant a Rule 17(b) motion to compel attendance of a psychiatrist who had previously examined the defendant and determined defendant lacked the mental capacity to commit the crime charged. Denial of compulsory attendance in that case left the defendant without any in-court testimony concerning his mental capacity, the only real issue in the case. Here, however, Gallagher did not seek an examination by the psychiatrist, only testimony that mind control is real. Moreover,

he had secured the attendance of at least four witnesses, including the person alleged to have controlled his mind. Under these circumstances, the trial court correctly denied the motions.

Defendant also sought the attendance of David Lee Brown, then an inmate at the federal penitentiary in Marion, Illinois, to show that Chapman could control defendant's mind, and that Chapman had controlled it for a long time. Defendant and Brown had been close friends since they were children, but he had not seen Brown for six months prior to the escape. Because the defense related to the time of the escape, and other witnesses apparently would testify to the same effect as Brown, without the problem of remoteness, the trial court denied the motion. We hold the trial court did not err in denying the motion. A trial court need not grant a Rule 17(b) motion if the requested witness would only provide cumulative testimony. *United States v. Plemons*, 455 F.2d 243, 246 (10th Cir. 1972).

The fourth witness whose presence defendant sought was Richard Alsop, an inmate at the federal penitentiary in Marion, Illinois. Alsop was one of the four men who escaped with Gallagher. Defendant asserted Alsop would testify that the prison official and inmate-driver of the truck at the time of the escape were accomplices and not hostages. The motion was made late in the trial, after defendant began his defense. The court denied the motion, regarding the delay that would occur as unjustified.

From the record it is clear that defendant failed to show a need for Alsop's testimony. His showing was only his personal assertion that Alsop would state the hostages were in the cab of the truck when it exited the prison grounds and were accomplices in the escape. Prior cross-examination of an FBI agent in the record reveals that when Alsop was arrested after the escape he gave a statement that named as occupants of the cab two of the escapees and not the hostages. Defendant had seen Alsop's statement to the FBI well before trial but had not contacted Alsop to determine whether his testimony would contradict the prior statement. Moreover, during the week prior to defendant's trial, Alsop pleaded guilty to the kidnapping charge before the judge trying this case, in effect admitting the hostages were not accomplices. Under these circumstances, it is clear that defendant's assertion did not satisfy the requirements of Rule 17(b). *See United States v. Stoker*, 522 F.2d 576 (10th Cir. 1975). *Cf. United States v. Coppola*, 479 F.2d 1153, 1163–64 (10th Cir. 1973) (showing of necessity is not satisfactory if defendant's assertion is grossly incredible).

## II

Defendant next contends the trial court denied him adequate time to interview witnesses and thus prepare his defense. Whether defense counsel, in this case Gallagher himself, has had adequate time for preparation is a question ordinarily left to the discretion of the trial court, *Stamps v. United States*, 387 F.2d 993, 995 (8th Cir. 1967), and depends upon such circumstances as the complexity of the legal and factual issues and the availability of witnesses. *Eubanks v. United States*, 336 F.2d 269 (9th Cir. 1964). Failure of the court to allow additional time for preparation is not error absent a showing of abuse of discretion. *See, e. g., United States v. Ready*, 574 F.2d 1009, 1014 (10th Cir. 1978).

We have carefully reviewed the record in this case and hold that the court did not abuse its discretion. The issues here, factual and legal, were not difficult. Defendant's case rested almost totally on the satanic defense. His witnesses had all been brought in at government expense. Several were prison inmates, as was defendant. Because of security problems the judge did not have these witnesses brought to the court until the first day of trial. Defendant refused to allow his standby counsel to interview any of the witnesses on his behalf. During the trial, the court gave defendant several opportunities, including at least one full morning, to interview his wit-

nesses. Prior to trial the court had granted defendant's motion for increased telephone and visitation privileges in order to prepare for trial.

Much of defendant's argument on this issue seems to be premised upon his notion that, when invoking the right to represent himself, he is entitled to be treated in all respects as if he were an independent attorney. The core of this premise is correct, but when defendant chooses to represent himself his actions are circumscribed to some extent by the fact that he is incarcerated. In this case, the court did much to minimize this obstacle by appointing standby counsel and honoring numerous requests for interview time. The court acted properly and is to be commended for providing defendant every reasonable opportunity to present an effective defense.

### III

■ Defendant next contends the court erred when it denied his request that the jury be allowed to view the truck used in the escape from the penitentiary. Defendant asserted such an examination would show nail holes in the side of the truck indicating that the false partition was manufactured and placed in the vehicle outside of the penitentiary. ·

■ Whether the jury is permitted to view evidence outside the courtroom is a matter for the discretion of the trial court. *See Casias v. United States,* 302 F.2d 513 (10th Cir. 1962). In the present case numerous photographs of the truck and its interior were admitted into evidence, including photographs demonstrating the placement of the false partition in the truck. Defendant did not claim these were inadequate to show the alleged nail holes. Several witnesses testified concerning the state of the inside of the truck after the escape, but defendant did not cross-examine them on this question. Nor did defendant produce any photographs, although he or his standby counsel could have taken photo-

graphs, pursuant to Fed.R.Crim.P. 16(a)(1)(C), and introduced them at trial. Finally, defendant's request was not made until late in the trial. The truck presumably was in the possession of prison officials in Leavenworth and defendant had not issued a subpoena duces tecum pursuant to Fed.R.Crim.P. 17(c) to secure production of the truck at trial. Under these circumstances, we conclude the court did not abuse its discretion.

### IV

■ Finally, defendant contends he was denied his right to an impartial jury because United States marshals escorted two jurors from their homes to the courthouse. The only evidence concerning this claim is the following statement of the court to the jury: "[W]e do have the problem of the weather again and I think the—I know two of my jurors came with the United States Marshals and they will have to take you back." The marshals were not witnesses, but they were federal employees as were many witnesses at the trial. The substance of defendant's argument is that since he was being tried by the United States for crimes against the United States, contact between the marshals and the jurors could have resulted in a "profound, subtle influence, necessarily prejudicing the defendant's right to an impartial jury." Appellant's Brief p. 16. Without more, this argument is speculative and frivolous.

AFFIRMED.