**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert D. GOLUB, Defendant-Appellant.**

**No. 79–1577.**

United States Court of Appeals,
Tenth Circuit.

Dec. 1, 1982.
Rehearing Denied Feb. 25, 1983.

Linda Surbaugh, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., with her on brief), Denver, Colo., for plaintiff-appellee.

Thomas A. Wallace, Denver, Colo., for defendant-appellant.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

This case is before us following a partial remand to the district court, pursuant to our *en banc* order. A brief recitation of the litigative history will facilitate our review.

Robert H. Golub (Golub) was charged in an eight count indictment on February 24, 1979, with mail fraud and with transportation of money obtained by fraud in violation of 18 U.S.C.A. §§ 1341 and 2314. Golub was arraigned on February 24, 1979, and on March 7, 1979, the cause was set for trial on April 16, 1979.

On March 30, 1979, Daniel Smith, retained counsel for Golub, moved to withdraw. During a hearing on the motion on April 9, 1979, the district court questioned Golub relative to his plans for obtaining counsel:

THE COURT: I gather the defendant is here. What are your plans as to getting a lawyer?

THE DEFENDANT: Sir?

THE COURT: What are your plans as to getting a lawyer, what do you plan to do?

THE DEFENDANT: I've contacted my family and we are in the process of doing that, Your Honor.

THE COURT: Well, do you oppose this motion to withdraw?

THE DEFENDANT: No, sir.

THE COURT: And do you understand that the case is set for trial and it's going to trial—

THE DEFENDANT: Yes, sir.

THE COURT: —as scheduled?

THE DEFENDANT: Yes, sir.

[Original R., Vol. VII at p 2].

The Court thereafter granted Smith's motion to withdraw and ordered the case to go to trial as scheduled on April 16, 1979.

Smith testified during the course of our partial remand that he had moved to withdraw as counsel because Golub was a very uncooperative client; Golub failed to keep appointments; Golub failed, aside from one request, to respond to his inquiries or to supply him with information concerning the Government's case. Smith also stated that Golub's case was not complex at all, and that with a cooperative client, one week was sufficient time to prepare for trial.

On cross-examination Smith reiterated that he moved to withdraw because Golub was uncooperative, and not because Golub failed to pay his initial fee of $5,000.00, adding, "I know of no law that would allow me to withdraw as a defense attorney from a criminal case for lack of being paid a fee."

Four days prior to the April 9, 1979 motion hearing, Golub had discussed his case with his uncle, Sheldon Emeson (Emeson), a practicing attorney. After the district

court granted attorney Smith's unchallenged motion to withdraw, and ordered that the case proceed to trial as scheduled, Emeson made a long distance telephone call to the judge, in which he requested a continuance for Golub's trial. When the district court indicated that the case would go to trial as scheduled, Emeson agreed to defend Golub. Emeson subsequently rearranged his schedule between April 9 and April 16, 1979, and prepared Golub's defense.

During the course of Golub's two-day trial, the Government dismissed two of the counts, and Golub was found guilty on the remaining six. Golub was sentenced to five years in prison on each of the six counts, the sentences to run concurrently.

On appeal[1] we held that Golub was denied adequate counsel in view of the limited time available for Emeson to prepare for trial. We, accordingly, reversed, with "direction to the trial court to see to it that defendant is adequately represented by counsel at a new trial." (638 F.2d at p. 190). This opinion was filed on November 17, 1980.

On December 24, 1980, the United States petitioned for rehearing with suggestion for rehearing *en banc.* Included with the material supportive of the United States' motion for rehearing was an affidavit of the trial court which stated in part:

> On April 9, 1979, it was, and it now is my belief that defendant was utilizing a ploy to obtain a continuance, and I advised him that I intended to try the case on the date it was set for trial. He voiced no objection to that. [Indeed, the then scheduled trial date was within a week or ten days of the latest trial date permitted under the Speedy Trial Act.] Because of defendant's acquiescence in Mr. Smith's motion to withdraw, I granted it, but had defendant objected, I would have denied the motion. I have no doubt that with client cooperation, Mr. Smith would have been ready to try the case.
>
> Shortly after April 9, 1979, I received a long distance telephone call from Sheldon Emeson, Esq., saying that he was related to the defendant and that he would represent him. He orally asked for a continuance, but the only reason he advanced in support of his request was that he had some county court cases set for trial and that those trials would conflict with the long standing setting of the federal court case. I told Mr. Emeson that that was not reason for a continuance and that under no circumstances would I act on a telephonic motion for a continuance made by a lawyer who had not entered an appearance in the case. I told him about the history of the case, and that I thought the defendant was trying to manipulate the court. I am sure that I was not optimistic as to his chances for a continuance. However, I at no time told him that I would not consider a written motion for a continuance setting forth adequate grounds to justify the last minute delay. He replied that he could and would be ready for trial, and he was.
>
> No written motion for a continuance was ever filed, and when the trial started on April 17, 1979, instead of moving for continuance, Mr. Emeson affirmatively stated on the record that he and his client were ready for trial. An audit of the clerk's minutes shows that the taking of testimony in the case took a total of eight hours; that the defendant testified at some length and that two other defense witnesses were called. Mr. Emeson is a former state public defender and he is a former elected district attorney. He has had long experience in the trial of criminal cases in the state courts, and the Colorado Rules of Criminal Procedure do not differ much from the Federal Rules. The defendant had constructively fired one of the best criminal trial lawyers in the state, and, knowing his ethics, I am confident he would not have walked out on the defendant just because he hadn't been paid. The jury convicted the defendant on evidence I thought was more than sufficient, but it did so after a trial which was well handled on both sides.

1. *United States v. Golub,* 638 F.2d 185 (10th Cir.1980).

Following the trial, [I am unsure whether the visit was on the day of the jury verdict or on the day of sentencing.] Mr. Emeson came to my chambers, and he explained that he had defended the case only because of the relationship between him and the defendant. He explained that he wasn't being paid, and he thanked me for that which he said he thought had been a fair trial. He did not hint that he needed more time to prepare, and he didn't suggest prejudice to the defendant because of lack of preparation time.

[Affidavit, pp. 2–3].

Emeson also filed an affidavit which stated in part:

On April 10, 1979, I placed a long distance phone call from Lamar, CO. to Judge Fred M. Winter [sic] of the United States District Court in Denver, CO. Lamar, CO. is 220 miles Southeast of Denver, CO. The conversation lasted four minutes (see attached photocopy of phone bill).

I advised Judge Winter that I was related to Robert D. Golub and that I was attempting to help him. I stated that I would try to obtain a trial attorney for him. I stated that I did not feel qualified due to the relationship and because of my limited experience in Federal Court.

Judge Winter then advised me that the case was a simple mail fraud and that his order for trial would stand. I then informed Judge Winter that I would see what I could do in the time available.

My purpose in making this call was to explain Golub's dilemma and that if given some time, I would personally arrange for Golub to have trial counsel.

After the call, I was convinced that the filing of his motion to continue would have been a useless and time consuming gesture.

[Emeson affidavit].

In addition thereto, counsel for Golub provided this court with the names of eleven witnesses that Golub would call at a retrial.

On April 9, 1981, sitting *en banc* we ordered:

The captioned appeal is partially remanded to the United States District Court for the District of Colorado, pursuant to 28 U.S.C. § 2106, for that court's further proceedings, if necessary, for a determination as to whether or not a new trial should have been granted to appellant because of inadequacy of counsel, or because of the inability of counsel to make adequate preparation under the circumstances.

This Court retains jurisdiction of all other issues in the appeal. . . .

Upon completion of its further proceedings, the trial court shall enter its findings and conclusions and order and, after supplementation of the record, the appeal shall be remanded to this Court for further consideration.

[*En Banc* Order, April 9, 1981, page 2].

In accordance with our partial remand, an evidentiary hearing was held on May 26–27, 1981. Golub was represented by appointed counsel. Both Golub and the United States presented expert testimony as to the adequacy of Emeson's representation of Golub. Emeson also testified, relating that financial problems had precluded his calling witnesses during the trial. However, Emeson did not explain how a continuance would have aided in his defense of Golub. Significantly, Emeson at no time represented to the court that Golub had requested that any of the eleven witnesses Golub later indicated he would call at a retrial be called at the trial proper.

On May 27, 1981, at the conclusion of the hearing, the court set the matter for an additional two-day hearing on July 27, 1981. The court advised the parties that any subpoenas which defense counsel might request "to bring before the court anyone who could present testimony designed to show prejudice to" Golub would be authorized. When Golub's requests for subpoenas were not filed until July 16, 1981, the court continued the July 27, 1981 hearing to August 3, 1981.

At the August 3, 1981 hearing, only four of the eleven witnesses whom Golub had

indicated to this court on his appeal would appear at a retrial, appeared and testified in response to Golub's subpoenas. After these witnesses testified, counsel for Golub stated that there were additional witnesses who could demonstrate how Golub was prejudiced by failure to receive a continuance, but that the four-month period between the remand and the August 3, 1981 hearing date was too short a time to locate all of the essential witnesses. The district court, again in a most accommodating manner, scheduled a final evidentiary hearing for December 17, 1981. This, of course, afforded Golub a second opportunity to subpoena additional witnesses of his choice. The time frame accorded Golub was approximately four and one-half months.

On December 17, 1981, counsel appeared and stated that no additional witnesses were available. The court again accommodated Golub by setting January 5, 1982 as a final hearing date at which additional witnesses could testify. No additional witnesses testified on January 5, 1982.

On January 14, 1982, the court entered its memorandum opinion in accordance with our partial remand. Within its opinion the court first considered whether a new trial should be granted because of inadequacy of counsel. The court stated in part:

> I am directed to first make a finding as to whether a new trial should have been granted because of inadequacy of counsel. Before I get to that, I mention that this case presents a golden opportunity to receive some advice from an appellate court which will be of help to all trial judges. The advice I solicit is what a trial judge does when a judge worries about the competency of a *retained* lawyer. It's a dilemma. A defendant's Sixth Amendment rights are violated if he isn't competently represented, but they are violated if there is interference with his freedom of choice of counsel. Certainly, Sheldon Emeson has more trial experience than do 95% of the lawyers who appear in this court, and if trial judges are supposed to step in to say that lawyers with his background aren't qualified, a Pandora's box

is opened. Mr. Emeson has been trying lawsuits for 29 years. He has been a Public Defender. He was elected District Attorney. Twenty-five percent of his time as of the time of this trial was spent on criminal cases. In this case, he spent eight hours looking over the discovery the government voluntarily supplied and he talked to the defendant and worked on the case another two days. He invested more time in research. He testified on May 26, 1981, as to the defenses he planned for defendant, and I don't know what more he could have done had he been given a six months delay. He called witnesses to testify for Mr. Golub, and the defendant himself testified at length. He took advantage of the opportunity afforded to interview government witnesses during recesses in the trial called especially for that purpose. Nine of the eleven witnesses listed in the filing with the Court of Appeals were mentioned in Golub's testimony, and Mr. Emeson could recall several of those names. Mr. Emeson was well prepared.

> \*  \*  \*  \*  \*  \*

> Mr. Emeson's experience was far, far greater than the suggested trial experience required under any certification of trial lawyers program . . . . I don't think it reasonable to argue that Mr. Emeson should have been told before the trial started that he wasn't qualified to try the case. I just wish more lawyers we appoint possessed his experience and skill . . . . Based on my observation of the trial, the defendant was well represented . . . . In my judgment, Mr. Emeson's representation of Mr. Golub was not just adequate; it was above average.

[R. Remand Supplemental, Vol. II at pp. 00065–00066].

Within its memorandum opinion, the court also considered whether a new trial should be granted in view of the limited time Emeson had to prepare for trial. In considering this question the court stated, in part:

> With a time space from April 10, 1981, to January 5, 1982, and with government

funds available to produce witnesses, I have listened to only four of the disinterested witnesses named in the Court of Appeals, and I heard nothing which convinces me that defendant was prejudiced by my failure to grant a continuance. The telephonic request was for a continuance until some county court cases were tried by Mr. Emeson, and I don't know how he could have located witnesses appointed counsel working with government funds has been unable to find or has elected not to call after nine months.

I have reviewed the record; I have listened to the arguments of defense counsel; I have heard the testimony of every witness defendant called and I have issued every subpoena asked for by defendant. I don't think that any prejudice has been shown and I do think that the Government has established that there was no prejudice resulting to defendant from the refusal to act on a telephonic request for continuance. I don't challenge the good faith of counsel's representations to the Court of Appeals, but with funds available to investigate that which counsel had been told by the defendant, the helpful testimony just isn't there. In a nutshell, I think that counsel of limited experience in criminal cases bought a bill of goods glibly sold to him by his client, and that he thereafter innocently resold it to the Court of Appeals. Sheldon Emeson operating with long criminal trial experience didn't buy the bill. If he had, he would have filed the required written motion and he would have listed in the motion the supposed helpful witnesses who haven't helped even by this late date.
[R. Remand Supplemental, Vol. II at pp. 00070–00071].

The record thus developed by the district court in accordance with our partial remand is now before us. Our review is directed to the district court's ruling that Golub was not denied effective assistance of counsel because of inadequacy of counsel or because of the inability of counsel to make adequate preparation under the circumstances.

## ADEQUACY OF COUNSEL

In accordance with our partial remand, the district court undertook additional evidentiary hearings to determine "whether or not a new trial should have been granted to appellant because of inadequacy of counsel". In so doing, the district court considered, *inter alia,* the testimony of expert witnesses called both by Golub and the United States on the adequacy of Emeson's performance as Golub's defense counsel, the testimony of Emeson personally, and the court's personal observation of the trial.

Golub's expert, Leonard Chesler, an attorney, testified he had been a member of the Colorado State Bar for thirteen years and was admitted to practice in the federal district court of Colorado and the Tenth Circuit Court of Appeals. Chesler's past employment included five years as a prosecuting attorney with the Second Judicial District of the State of Colorado; two and one-half years in a firm, and approximately five years in his own practice. In addition thereto, Chesler had lectured to the National College of District Attorneys, at the Bates College of Law, served on the trial tactics panel at Northwestern University, and "give[n] 13 to 15 lectures in this State and other states each year in the field of criminal law". Chesler had also published over twenty-four articles utilized by the College of Prosecuting Lawyers and the National College of Defense Lawyers. Chesler reviewed the entire file herein prior to testifying.

Chesler testified, *inter alia:* Golub was not afforded effective assistance of counsel; a lawyer can be competent in state court and not competent in federal court; Golub's case was reasonably complex; Emeson should have made a conditional entry of appearance predicated upon a continuance; and that Emeson should not have allowed himself to represent Golub "in a matter that so important and in such a short period of time". Chesler did observe, however, that "I should also tell you that I have no fault with the skill or technique utilized in the trial itself. As a matter of fact, I

thought an admirable job was done, I thought that appropriate evidentiary objections were raised during the trial, I thought skillful questioning was utilized" [R. Remand Supplemental, Vol. II at p. 18].

On cross-examination Chesler stated that in his personal opinion Emeson was an excellent litigator; Golub never indicated he was dissatisfied with Emeson; it was reasonable for the court to rely on Emeson's statement that he was ready for trial.

Emeson testified during the hearing, *inter alia,* that: he discussed the counts and potential witnesses with Golub; he tried to determine what the witnesses would say and "what were their strong or weak points insofar as the defense side of the case" [R. Remand Supplemental, Vol. III at p. 44]; he could not develop a "single capable line of defense" but his defense was "to sit back and try and potshot at the prosecution" [Id.]

On cross-examination Emeson acknowledged that the discovery material made available to him included written statements of the Government's witnesses; he spent considerable time with Golub the week before the trial discussing the facts of the case and defenses; he never related to the court at pretrial or during trial that he felt prejudiced because of insufficient time to prepare; the first time he alleged prejudice by no continuance was after trial; nothing in the record indicates he was having a problem getting defense witnesses; he reviewed the Government's discovery "five or six times"; he and Golub did discuss the eleven potential defense witnesses, i.e., "But we did discuss these people as potential witnesses ... we would discuss their involvement in each transaction to determine in my mind whether or not they could add or shed some light to the defense side of the case" [R. Remand Supplemental, Vol. III at p. 78].

The Government's expert, Edward Nottingham, a former Assistant United States Attorney, testified, after reviewing the entire file, that Golub's case was a relatively simple one and could be prepared in a week's time; that Emeson was competent

counsel; that Golub's predicament in preparing for trial one week in advance with Emeson was attributable to Golub's failure to cooperate with his first attorney; and that one can not fault the attorney for "something that the defendant failed to do".

Based on this evidence, and the trial judge's personal observations, the district court held that Emeson's representation of Golub "was not just adequate, it was above average".

In *Dyer v. Crisp,* 613 F.2d 275 (10th Cir. 1980), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980), we set forth the standard of review in this circuit when ineffective assistance of counsel is alleged. We reiterated our *Dyer* holding in *United States v. Crouthers,* 669 F.2d 635 (10th Cir. 1982), wherein we stated:

> The standard of review when ineffective assistance of counsel is alleged is whether the trial counsel exercised the "skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp,* 613 F.2d 275 (10th Cir. 1980), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). It is clear that "[e]ffective assistance does not demand that every possible motion be filed, but only those having a solid foundation." *United States v. Hines,* 470 F.2d 225 (3d Cir.1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973). Nor does the Sixth Amendment require an errorless defense. *Dyer v. Crisp, supra.* 669 F.2d at p. 643.

■ Applying this standard to the facts herein, we hold that the district court did not err in finding that Golub was not denied effective assistance of counsel.

Nothing in the record, other than his failure to move for a continuance, indicates that Emeson exercised less than the skill, judgment and diligence of a reasonably competent defense attorney. The fact that Emeson opted not to move for a continuance does not render his representation incompetent, based on the facts herein. Even Golub's own expert witness, after stating

that he felt Emeson was ineffective, acknowledged that he could not fault Emeson's skill or technique and that he thought an admirable job was done. Furthermore, Emeson fully discussed with Golub what the potential witnesses Golub called to his attention would testify to. Emeson listened to determine whether they would cast "some light to the defense side of the case". It would seem that Emeson determined that they would not because he concluded that his best approach was to "sit back and try and potshot at the prosecution". Emeson's apparent determination in this regard is further buttressed by the fact that the four witnesses eventually called on behalf of Golub were not helpful.

The district court's finding that Emeson served as adequate counsel is further buttressed by the uncontested fact that Golub was not a cooperative client. Along these lines, we deem Mr. Smith's and Mr. Nottingham's observations, which were not rebutted, to be most pertinent. Mr. Nottingham, testifying as an expert, stated:

In considering how that fact bears on the issue of effective assistance of counsel, however, it seems to me that you have to try to separate *what part of Mr. Golub's predicament was due to problems with his attorney or attorneys and what part of his predicament was due solely to something that he was responsible for.*

Mr. Golub had counsel from the date that he was indicted: Mr. Smith. One would normally expect from a cooperative defendant or a defendant who was determined to prove his innocence that he would jump at every opportunity to confer with his defense attorney, that he would keep appointments with his defense attorney and that he would in every way try to make available to the defense attorney the names, every address he knew, the work telephone number, the home telephone number, every possible piece of information as to witnesses who might be favorable to his defense.

Now, it is true that Mr. Emeson only had seven days to prepare for trial, and to the extent that you can't get subpoenas out in seven days and to the extent

that witnesses' schedules cannot be adjusted within seven days, or to the extent that you even have trouble getting in touch with witnesses, i.e., making telephone contact in seven days, *it seems to me that's a problem that is attributable not to Mr. Smith and not to Mr. Emeson, it is attributable to the fact that Mr. Golub failed to cooperate with Mr. Smith in keeping appointments.*

*I don't see how, when you're discussing the issue of whether somebody was effectively represented by an attorney, you can fault the attorney or attorneys for something that the defendant failed or omitted to do.*

[R. Remand Supplemental, Vol. III at pp. 162–163]. [Emphasis supplied].

ADEQUACY OF TIME TO PREPARE

■ In accordance with our partial remand, the district court also addressed our question of whether Golub should have been granted a new trial because of the inability of counsel to make adequate preparation under the circumstances.

In *United States v. King,* 664 F.2d 1171 (10th Cir.1981), *quoting United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), we addressed the necessity of affording defense counsel adequate time to prepare. In *King, supra,* we stated:

The asserted interference with one's right to counsel will warrant reversal so long as it "had or threaten[ed] some adverse effect upon the effectiveness of counsel's representation ...." *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981).

Inadequate case preparation can jeopardize an accused's right to effective assistance of counsel. *See Powell v. Alabama,* 287 U.S. [45] at 71, 53 S.Ct. at [55] 65 [77 L.Ed. 158]. Although frequently the result of a slothful lawyer, inadequate preparation can also be caused by unreasonable time constraints imposed by a trial court. *Golub,* 638 F.2d at 189; *United States v. Olivas,* 558 F.2d 1366, 1367 (10th Cir.1977), *cert. denied,* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1978).

Whether court-induced lack of preparation deprives a defendant of Sixth Amendment rights turns on the circumstances underlying his particular case. *Rastrom v. Robbins,* 440 F.2d 1251 (1st Cir.), *cert. denied,* 404 U.S. 863, 92 S.Ct. 53, 30 L.Ed.2d 107 (1971). The factors that must be analyzed to determine whether the given preparation time was sufficient to permit the attorney to effectively assist his client include: "(1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel." *Golub,* 638 F.2d at 189.

664 F.2d at p. 1173.

We emphasized our *King, supra,* holding in *United States v. Cronic,* 675 F.2d 1126 (10th Cir.1982). We there observed:

There is no conflict between the rule of *King* and *Golub* and the Supreme Court's opinion in *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). In *Morrison* the Court held that pretrial "interference" with the right to counsel did not warrant the most drastic remedy of dismissing an indictment "absent demonstrable prejudice, or substantial threat thereof". *Id.* at 365, 101 S.Ct. at 667. Nothing in *Morrison* suggests that "a substantial threat of prejudice" may not be inferred from the circumstances of pretrial and trial representation. Nothing in *Morrison* suggests that reversal of a conviction may not be "relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial". *Id.* at 365, 101 S.Ct. at 667.

675 F.2d at p. 1128.

Under our holdings in *King* and *Cronic* we must consider: (1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel.

As set forth, *supra,* in conjunction with our remand, Golub had nine months, between April 10, 1981, and January 5, 1982, with government funds available, to produce witnesses, to procure additional witnesses, to present any evidence, and to establish that he had inadequate time to prepare his defense and that he was actually prejudiced by the district court's failure to grant Emeson's oral request for a continuance.

Nothing in the record negates the district court's finding that Emeson was afforded adequate time to prepare Golub's defense. Emeson, an experienced attorney, was afforded a week to prepare what Smith and Nottingham characterized as a relatively simple case. Even were we to assume, *arguendo,* that the week available to Emeson to prepare was inadequate, the efficacy of the contention that inadequate time to prepare existed is vitiated when, as here, Golub was unable to demonstrate how he was prejudiced notwithstanding the fact that he was accorded the nine month period following our remand to do so. Golub was afforded every opportunity by the district court during the course of our partial remand to come forward with additional witnesses and to develop additional defenses tending to establish that the one week period afforded Emeson was indeed inadequate time within which to effectively prepare a defense. This simply was not done. Thus, no prejudice has been established or demonstrated.

During this time frame, Golub produced only four of the eleven witnesses that he indicated to this court he would call at a retrial. The district court found, and we concur, that the absence of the testimony of two of the witnesses called was not prejudicial to Golub, inasmuch as Golub's testimony was more exculpatory than that of those witnesses. Similarly, the testimony of the other two witnesses called did not benefit Golub. One testified that he had never heard of Golub and did not know him when the case was tried. One testified that he had visited with Golub prior to the trial at which time Golub stated that it (the trial) amounted to nothing. This witness also testified that Golub did not request that he testify at his (Golub's) trial.

Furthermore, Golub's case was far removed from the complexities of *King* and *Cronic*. Golub's trial consumed a period of two days; the testimony of witnesses required only eight hours. The Government presented seven witnesses and introduced approximately twenty exhibits. Golub presented three witnesses, including himself, and introduced seventeen exhibits. The attorney in *King* appeared twenty-seven days before trial. The *King* trial lasted eight days and involved approximately 200 witnesses and 5,000 exhibits. Similarly, in *Cronic,* court appointed counsel who specialized in real estate law and was appearing in his first criminal case, was afforded twenty-five days to prepare Cronic's defense, after he had requested a minimum of thirty days to prepare. The Government had developed its case over a four and one-half year period. The Government's proof consisted of over fifty exhibits and the testimony of seventeen witnesses from four states. Golub's case was simply not as complex as *King* and *Cronic*.

We thus hold the district court did not err in finding that Emeson had adequate time to prepare Golub's defense. Although every opportunity was afforded him, Golub failed to establish during the course of the remand that his defense at trial was impaired due to inadequate pretrial time. We deem it noteworthy that Golub did not present any witnesses at the last two hearings specially scheduled by the court for the specific purpose of affording Golub additional opportunities to present evidence. Golub completely failed to come forward with any demonstrable prejudice.

Our prior opinion, *United States v. Golub,* 638 F.2d 185 (10th Cir.1980) is hereby reversed and vacated insofar as it conflicts with our holdings herein.

WE AFFIRM.

McKAY, Circuit Judge, concurring:

I concur in the judgment of affirmance and write separately to express my understanding of the case.

Mr. Golub was convicted of six counts of mail fraud in 1979. He appealed his conviction, claiming that he was denied adequate assistance of counsel at trial. We reversed the conviction and remanded the case for a new trial. After a rehearing *en banc,* we reconsidered and modified our decision, remanding the case for a specific determination from the district court of whether Mr. Golub was fully afforded his sixth amendment right to assistance of counsel. On remand, the district court provided Mr. Golub with court-appointed counsel, a generous allowance of continuances, and government funds to subpoena witnesses and provide expert testimony regarding the adequacy of counsel at trial. After four hearings over a nine-month period, the district court determined that Mr. Golub's counsel in the original trial both was competent and was allowed sufficient time to prepare the defense. Mr. Golub now returns to us on appeal.

The tortuous history of this case registers the importance that we attach to the sixth amendment right to counsel. Together with the district court, we have conducted a searching inquiry into Mr. Golub's sixth amendment claim. An examination of the fully developed record now before us dispels any previous doubts that Mr. Golub received adequate assistance of counsel.

The expanded record serves to focus and resolve the inquiry that Mr. Golub projected in the first appeal. Clearly, the issue is not "Did the defendant have a lawyer?" He did. The issue is not "Did the defendant have a competent lawyer?" He did. The issue is not "Did the defendant have a competent lawyer who exercised reasonable skill, judgment and diligence at trial?" Clearly, he did.[1] Instead, the record reveals that the sole controvertible issue on appeal is "Did the trial court's insistence that Mr. Golub's newly retained lawyer try the case on one week's notice prevent the lawyer from preparing an effective defense?" Illu-

---

1. On remand, the defendant's own expert witness testified that "I have no fault with the skill or technique utilized in the trial itself. As a matter of fact, I thought an admirable job was done ...." Record, vol. 2, at 18 (record on remand).

minated by the full record, the answer is "No."

The record indicates that the defendant's first lawyer withdrew from the case two weeks before trial because Mr. Golub was monumentally uncooperative. The record also shows that the trial court was determined to prevent further delays in the trial, and that the trial court pressured Mr. Golub's new counsel to proceed to trial under a difficult time schedule. The defendant asserts that the schedule denied him effective assistance of counsel, contending that as a result of the time pressure, his trial attorney was prevented from calling eleven exculpatory witnesses.

I agree that a lack of trial preparation time may result in a denial of the sixth amendment right to counsel. *See Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *United States v. King,* 664 F.2d 1171 (10th Cir.1981). However, as the Supreme Court has noted, there is no ground for providing remedies for pretrial interferences absent some basis for inferring prejudice to the defendant. *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). *See United States v. Cronic,* 675 F.2d 1126 (10th Cir. 1982). The record before us specifically demonstrates that the time schedule did not prejudice the defendant. The testimony of the trial attorney indicates that it was either the lack of assistance from the defendant in locating the witnesses, or the lack of value in their potential testimony, that precluded the attorney's use of these witnesses.[2] Moreover, it is particularly telling that after four hearings on remand, with the aid of very able counsel, with government funds available to subpoena witnesses, with repeated continuances spanning nine months, the defendant failed to provide any of the exculpatory testimony that he claims his trial lawyer, given additional time, would have produced at trial.

The fully developed record convincingly shows that the short trial preparation period afforded by the court did not prejudice the defendant. With this issue put to rest, nothing remains of the defendant's claim of inadequate assistance of counsel when it is assessed under any reasonable interpretation of the constitutional standards. *See United States v. Crouthers,* 669 F.2d 635 (10th Cir.1982); *Dyer v. Crisp,* 613 F.2d 275 (10th Cir.), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). Three highly qualified lawyers have provided a more than adequate job of ensuring that the issues in the defendant's case were properly presented in the trial court and on appeal. After maintaining earlier doubts as a result of shadows cast by an inadequate record, I now have no hesitation in affirming the appealed convictions.

WILLIAM E. DOYLE, Circuit Judge, dissenting.

I respectfully dissent.

## PRELIMINARY STATEMENT

The above cause has been before this court on a prior occasion. In that previous appeal the only point considered was the adequacy of counsel at the trial. We ruled on that occasion, at 638 F.2d 185, that there was an inadequacy of counsel due to the trial court's forcing the case to go to trial and the inability of counsel who finally entered his appearance to make adequate preparation for the trial in the time allowed.

We later took notice of the fact that the trial court had not had an opportunity to rule on this issue. In view of that deficiency we remanded the cause for the purpose of the trial court's consideration of the inadequacy issue. We now are reviewing the trial court's ruling that the defendant was *not* denied effective assistance of counsel.

In briefly recounting the facts as they appear in that opinion it is important to note that the time frame is of some importance. The indictment was returned February 14, 1979 for eight counts of mail fraud and interstate transportation of money

---

**2.** Indeed, one witness that the defendant claimed would produce exculpatory evidence testified that he did not know the defendant or any of the facts surrounding his case.

obtained by fraud. Arraignment took place February 24, 1979. On March 7, 1979 the cause was set for trial commencing the week of April 16, 1979. Daniel Smith appeared as counsel with the defendant at the arraignment. But on March 30th, 1979 the mentioned lawyer moved to withdraw from the case stating that he had not been paid and that the defendant had not cooperated in that he had failed to keep some appointments and had misled counsel as to his whereabouts. In view of the magnitude of the attorneys fee it is not surprising that the defendant had not been able to abide by the agreement which had been previously made. A hearing was held on April 9, 1979 before the trial judge. At that time the judge granted the motion of Mr. Smith requesting that he be allowed to withdraw. Defendant did not object to the withdrawal. No doubt he was unaware of the significance of this. On that occasion, April 9, 1979, the judge advised the defendant that no continuances would be granted and that the case would go to trial as scheduled whether the defendant was represented or not. The trial was scheduled to commence on April 17th, 1979. The trial court did not inquire of the defendant as to whether or not he was financially able to employ other counsel. This notwithstanding, it appeared that there was a funds problem of some kind inasmuch as the defendant had not made *any* payment to his then counsel, Mr. Smith. Notwithstanding that condition the judge told the defendant in unmistakable terms that no continuance would be granted and that the case would go to trial as scheduled whether the defendant was represented by counsel or not.[1]

The defendant was unable to employ counsel at that late date so he enlisted the help of an uncle by marriage, Mr. Sheldon Emeson, an attorney, who practiced in Lamar, Colorado. Emeson sought to obtain counsel for him at first, but no lawyer would accept a case of that complexity in view of the circumstances, that is, the time problem that was present. So Emeson, himself, sought to gain some time from the judge. He called the judge on the phone. Emeson said that his application for a continuance was mainly for the purpose of providing him with the necessary time to prepare for trial. The judge said that the request was made because Mr. Emeson had some county court cases pending and preferred to try them rather than that of the defendant. In any event the judge denied his telephone request. The failure of Mr. Emeson to file a written motion for a continuance, together with the failure to make a record on the day of trial that he was unprepared, indicate that he was not familiar with the Federal Rules of Criminal Procedure.

So the trial began on April 17, 1979 and on April 20th, after the jury had deliberated for two days, defendant was found guilty on six of the eight counts. Subsequently he was sentenced to five years imprisonment.

Inasmuch as the defendant had failed to provide any of the money which Smith had charged for a fee, just prior to the trial, Daniel Smith filed the motion to withdraw from the case and the motion was granted. Mr. Smith acknowledged at the recent hearing that he was surprised. Defendant's monetary problems were not brought to the court's attention at the time Smith filed his

---

1. THE COURT: ... And you will go to trial next Monday. If you have a new lawyer, fine; and if you don't, it will go to trial without a lawyer, you will have to represent yourself, but it is going to trial. You fully understand that?
   THE DEFENDANT: Yes, sir.
   THE COURT: All right, that being so, the motion of defense counsel to withdraw is granted and the case will go to trial as scheduled, and you should so plan, Mr. Stuckey.
   MR. STUCKEY: We have planned on it, Your Honor. But may I ask if the Court

would inquire of the defendant as to whether or not he knows with any more specificity if he's going to get another attorney? Because if he's going to, I guess the first thing the Court will be confronted with is a Motion for Continuance Thursday or Friday.
   THE COURT: Well, there's not going to be a continuance granted. He should come in here and go over the file. If he wants to get information about the case, I'm sure both Mr. Wiggins and Mr. Smith will be happy to cooperate with him in turning over anything they have gotten.

motion to withdraw or at the time of trial. It was, however, brought to the court's attention that the reason for Smith's withdrawal was failure to receive his fee.

## DISCUSSION

It is to be noted that the statute on appointment of counsel, 18 U.S.C. § 3006A(b) recognizes the obligation to make inquiry in a situation such as this. This section provides in part as follows:

> Unless the defendant waives representation by counsel, the United States Magistrate or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him. Such appointment may be made retroactive to include any representation furnished pursuant to the plan prior to appointment.

The trial court made no inquiry as to defendant's financial ability to employ an attorney notwithstanding that it was apparent from Smith's withdrawal that there was a money problem.[2] Indeed, this was the reason why his counsel wished to be relieved of the representation. It was very likely the most important reason. It is difficult to believe that he would have withdrawn because of the defendant's failure to cooperate in respect to keeping appointments if he was being paid. From counsel's statement at that time the court could very easily have recognized that the fee problem was paramount. The circumstances were such that the court could and should have taken some initiative with respect to whether the defendant had funds to employ counsel. The court did mention in its findings that it was impossible to grant moneys to bring witnesses in unless the defendant had made a showing that he was a pauper. But it would appear that he did make some showing although not purposeful. It was plenty apparent that there wasn't any money to be paid to the lawyers, otherwise he would not have turned to his uncle by marriage to represent him.

Our view is that the court ought to have taken some initiative in view of the fact that the case was set for trial in one week, and the court was determined to go forward. Indeed, later, the court did appoint a lawyer to represent him on the original appeal to this court. And incidentally defendant has been well represented by present counsel.

Had the judge made an inquiry, the problem would have been solved. He had a man before him whose lawyer had been relieved. He was faced with getting a lawyer or having to try the case without one. The Seventh Circuit in a very recent case, *United States v. Martin-Trigona,* faced a similar condition and dealt with it. *See* 684 F.2d 485 (7th Cir.1982).

> The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." If the defendant is financially unable to retain private counsel, the trial court must appoint counsel to represent him. *Argersinger v. Hamlin,* 407 U.S. 25 [92 S.Ct. 2006, 32 L.Ed.2d 530] (1972); *Gideon v. Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963). The Criminal Justice Act of 1964, 18 U.S.C. § 3006A, describes those situations in which a federal court must appoint counsel to represent a defendant. The court must advise the *pro se* felony defendant of his right to be represented by counsel and inform him that counsel will be appointed to represent him if he is "financially unable to obtain counsel." *Id* at § 3006A(b). If the defendant does not waive the right to be represented by appointed counsel, the court must appoint counsel to represent

---

2. 18 U.S.C. Sec. 3006A provides in part:

   In every criminal case in which the defendant is charged with a felony or a misdemeanor, ... the United States magistrate or the court *shall* advise the defendant that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the defendant waives representation by counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him. (emphasis supplied.)

him unless the court *"is satisfied after appropriate inquiry"* that the defendant is financially able to obtain counsel. *Id.* (Emphasis added.)

It might be argued in the present case that the defendant waived his right to counsel. However, since he was uninformed, it could not have been an informed waiver.

Following the remand by this court to the trial court for further proceedings the trial court held extensive supplemental hearings in which a good deal of additional facts were developed. This began on May 26, 1981 and continued at various times over a period of several months. The government made a broad scale presentation of the witnesses who were aware of the conditions. Several former members of the U.S. Attorney's staff were called and the witnesses who were endorsed by the government. The court heard all of these witnesses and finally concluded that none of them would have been of any value to the defendant had they been called. In other words the effect of the hearings was that no prejudice had been suffered by forcing the defendant to trial. The element that was overlooked was the inadequacy of time for preparation of the case. This resulted in inadequacy of counsel and this inadequacy was acknowledged by the lawyer, Mr. Emeson, who represented the defendant. The inadequacy of representation, resulting from insufficient time to prepare, is unquestionably a violation of defendant's constitutional right to the effective assistance of counsel. *United States v. Olivas,* 558 F.2d 1366 (10th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1977); *United States v. King,* 664 F.2d 1171 (10th Cir.1981). Whether defense counsel had adequate time to prepare is, it is true, a question of fact with respect to which the trial court has some discretion. However, the failure of the trial court to grant a continuance to allow additional time to prepare under circumstances such as these is an abuse of discretion. *United States v. Gallagher,* 620 F.2d 797 (10th Cir.), *cert. denied,* 449 U.S. 878, 101 S.Ct. 224, 66 L.Ed.2d 100 (1980).

In the case of *Wolfs v. Britton,* 509 F.2d 304 (8th Cir.1975) the court set out several guidelines which are applicable in assessing whether counsel had sufficient time to prepare a case for trial. These include 1) the amount of time afforded counsel; 2) the experience of counsel; 3) the gravity of the charge; 4) the complexity of possible defenses; and 5) the accessibility of witnesses to counsel.

In *Olivas, supra,* defense counsel had 33 days to prepare for trial in a somewhat routine type of narcotics case. The court found that there was no abuse of discretion. The trial court's denial of a motion for additional time was not an abuse of discretion.

In *United States v. Gallagher, supra,* it was also held that the refusal of the court to grant a continuance in a case involving escape from a federal penitentiary, did not constitute a violation of the Constitution. The court found that it was a very simple issue.

In the case of *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964), the Supreme Court said: "Myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Id.*

The present case is a mail fraud case in which the defendant was obtaining advanced fees for loans. This is a sophisticated type of fraud case. Here the counsel for the defendant had only eleven days from the time he learned of the indictment until trial to prepare the case and only seven days from the date the first attorney was actually allowed to withdraw. Only two witnesses were called by the defendant, whereas the government called four witnesses from Colorado, three from Texas, two from New York, and one each from Oklahoma and Mississippi. Regardless of this the jury deliberated for two days on the question of guilt or innocence before reaching a verdict. The fact that the trial was completed in less than two days does not measure the seriousness or the complexity of the case. We certainly must take

notice that fraud cases are notoriously difficult for both sides and this did not constitute an exception.

It seems to be assumed that a showing of no prejudice offsets any claim as to incompetency of counsel. In a careful reading of *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) the Supreme Court was speaking of the sanction to be imposed and it concluded that absent demonstrable prejudice the dismissal of the indictment was plainly inappropriate, even though the violation may have been deliberate. However, the presence or absence of prejudice should not be and cannot be the test of a violation of the Constitution. In an inadequacy of counsel case to require proof that a different result would have occurred had able counsel been present is not a true test of the unconstitutionality of the action.

Finally we do not wish to seem unduly critical of the trial court. Crowded dockets and associated problems make the job very difficult. We are not claiming that the kind of action that the record discloses here is uncommon. Indeed, the trial judge here is extraordinarily competent. But a case like this reminds us all of the unhappy fact that we are fallible.

I would reverse the case and remand it for a new trial.